## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re: UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA, LOCAL NO. 52, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ELAINE CHAO, Secretary, United States Department of Labor, et al., <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 07-0173 (CKK) |

### THE DEPARTMENT OF LABOR DEFENDANTS' MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants, Elaine Chao, Secretary, United States Department of Labor ("DOL"), and Paul DeCamp, Administrator, Wage and Hour Division, DOL, through counsel, respectfully move this Court to dismiss this action as it pertains to them. Dismissal is required because Plaintiffs cannot establish their entitlement to the extraordinary relief in the nature of mandamus that they seek. Alternatively, summary judgment pursuant to Federal Rule of Civil Procedure 56(c) is appropriate because there are no material issues of fact and judgment as a matter of law should be entered in DOL's favor. A statement of material facts not in dispute, a memorandum of points and authorities and a proposed order accompany this motion.

Dated: June 25, 2007

Respectfully submitted,

_ /s/ Jeffrey A. Taylor _
JEFFREY A. TAYLOR, D.C. BAR # 498610

United States Attorney

   /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

   /s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANTS

Of Counsel:

JONATHAN L. SNARE
Acting Solicitor of Labor
STEVEN J. MANDEL
Associate Solicitor
WILLIAM C. LESSER
Deputy Associate Solicitor
JONATHAN M. KRONHEIM
Counsel for Trial Litigation
JENNIFER R. MARION
Attorney
United States Department of Labor
Officer of the Solicitor
Room N-2716
200 Constitution Avenue, N.W.
Washington, DC 20210

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In Re: UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA, LOCAL NO. 52, et al.,      ) | |
| ) | |
| ) | |
| ) | |
| Plaintiffs,    ) | |
| ) | Civil Action No. 07-0173 (CKK) |
| ) | |
| v.    ) | |
| ) | |
| ELAINE CHAO, Secretary United States Department of Labor, et al.    ) | |
| ) | |
| ) | |
| ) | |
| Defendants.    ) | |
| ) | |

**THE DEPARTMENT OF LABOR DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT, OR IN THE
ALTERNATIVE FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants, Elaine Chao, Secretary of the United States Department of Labor ("DOL"), and Paul DeCamp, Administrator, Wage and Hour Division, DOL, (collectively referred to herein as the "DOL Defendants"), respectfully move to dismiss this action against them for failure to state a claim upon which relief can be granted. Alternatively, Defendants seek summary judgment in their favor because there are no material facts in genuine dispute and they are entitled to judgment as a matter of law.

**BACKGROUND**

The present action was initiated by both the international and local component of the United Government Security Officers of America ("UGSOA"). Complaint ("Compl.") at 2. Plaintiffs/Petitioners filed their complaint in this Court pursuant to the federal mandamus statute,

1

28 U.S.C. § 1361, seeking a writ of mandamus to compel Elaine Chao, Secretary of the United States Department of Labor, and Paul DeCamp, Administrator of the Wage and Hour Division of the DOL, to enforce and/or comply with the decision and order of an administrative law judge. The complaint also names as defendants Michael Chertoff, in his role as Secretary of the Department of Homeland Security ("DHS")[1] and U.S. Protect, Inc., the company that employs UGSOA's workers.  Id.

UGSOA Local 52 and the UGSOA International Union are the certified bargaining unit representatives for the employees of U.S. Protect.  Compl. ¶ 2.  Since approximately September 2003, U.S. Protect employees have provided security services at various federal facilities in the San Diego, California vicinity.  Id. ¶¶ 2-3.  Administration of the service contract with U.S. Protect falls within the purview of the Federal Protective Service, part of the DHS.  Id. ¶ 3.

On December 14, 2005, the Deputy Administrator of the Employment Standards Administration issued an Order of Reference pursuant to the provisions of 29 C.F.R. section 4.10(c) of the McNamara-O'Hara Service Contract Act of 1965, as amended, 41 U.S.C. § 351, et seq. ("the SCA" or "the Act"), thereby transmitting to the Office of Administrative Law Judges UGSOA Local 52's request for a hearing concerning the wages being paid to its employees. Exhibit A (Decision and Order dated March 7, 2006), at 1.  UGSOA contended that the wages and fringe benefits its employees were being paid were substantially less than the wages and fringe benefits being paid to other security workers providing comparable services in the San Diego vicinity.  Id. at 3. In a notice issued January 10, 2006, all interested persons, including

---

[1]DHS requested and received an extension of time in which to respond to the complaint up to and including July 30, 2007.  See Minute Order dated June 21, 2007.

U.S. Protect and DHS, were informed that a pre-hearing conference and a hearing would be held in San Diego on February 8, 2006. Id. at 1-2. Only UGSOA entered an appearance at the pre-hearing conference. Id. at 2.[2] At the hearing, UGSOA presented testimony from three witnesses and twenty-five exhibits. Id. UGSOA also submitted a post-hearing brief on February 15, 2006. Id. UGSOA contended that the wages for members of Local 52 employed by U.S. Protect should be increased from $18.50 per hour of straight time to $21.54 per hour and that their fringe benefit payments should be increased from $2.56 per hour to $2.86 per hour. Id. at 3.[3]

In his Decision and Order dated March 7, 2006, the administrative law judge ("ALJ") granted UGSOA the relief it sought. Specifically, the ALJ found that "[b]ecause no other interested party elected to appear at the hearing to oppose [UGSOA's] request, it [was] permissible to grant the request." Id. (citing 29 C.F.R. § 6.7(b)). In addition, the ALJ found that UGSOA's request had been supported by the testimony of its three witnesses and that the prevailing wage UGSOA suggested was "consistent with the results of Department of Labor

---

[2]DHS provided a letter to the administrative law judge indicating that it had received notice of the hearing but elected not to appear because it does not "intervene in labor disputes between agency contractors and their unions." Ex. A, at 2 n.1.

[3]The section of the Act most relevant to the administrative proceeding in this case is section 4(c), which governs predecessor contracts that contain collective bargaining agreements. 41 U.S.C. § 353(c). That section states that no contractor or subcontractor "under a contract" shall pay less than the wages and fringe benefits to which the employees "would have been entitled if they were employed under the predecessor contract." Id. Section 4(c) further provides that "[i]f the Secretary finds after a hearing . . . that such wages and fringe benefits are substantially at variance with those which prevail for service of a character similar in the locality . . ." the wage rates should be changed to reflect the prevailing rate. Id. DOL regulations establish the procedures for section 4(c) substantial variance hearings before an Administrative Law Judge, see 29 C.F.R. §§ 4.1(b); 4.10; 6.50-6.57, and provide that if no appeal is taken, the Deputy Administrator "shall promptly issue any wage determination which may be required as a result of the decision." 29 C.F.R. § 6.56.

surveys showing the wages prevailing for security workers in the vicinity of San Diego." Id. at

4.  The ALJ ordered the Administrator of the Department of Labor's Wage and Hour Division to

"promptly issue a new wage determination in accordance with [his] Decision and Order."  Id. at

5.

By letter dated August 16, 2006, the Administrator's authorized representative, the

Director of the Office of Wage Determinations, notified the contracting agency that the Wage

and Hour Division had applied the rates ordered by the ALJ to the contract and that the rates

were to be paid retroactive to the date of the ALJ's Decision and Order.  Exhibit B, Letter to Mr.

Kevin C. Schreiber, Contract Specialist, Federal Protective Service, Immigration and Customs

Enforcement, DHS, dated August 16, 2006.[4]

## ARGUMENT

### A.    Legal Standard

Defendants move for dismissal pursuant to Rule 12(b)(6) because Plaintiffs fail to state a

claim upon which relief can be granted.  The standard for granting a motion to dismiss pursuant

to Rule 12(b)(6) is well-known.  A motion to dismiss for failure to state a claim serves to test the

legal sufficiency of the complaint.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Kowal v.

---

[4]The Wage and Hour division did not incorporate the ALJ's rates into the registers of wage determinations listing the prevailing wage and fringe benefits for all occupations in the San Diego area.  In accordance with 29 C.F.R. § 6.7(b), because no other party appeared at the pre-hearing conference and hearing, the ALJ was permitted to "find the facts as alleged in the complaint."  However, the wage rate requested by UGSOA and thus ordered by the ALJ was greater than that listed in the DOL's existing prevailing age determination for the locality. Therefore, in lieu of issuing a revised wage determination in standard form, which would have general applicability and raise the prevailing wage for the entire locality, the Director notified the contracting agency of the new wage determination applicable to this specific procurement contract via letter, which is consistent with the applicable regulations.

MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  For purposes of a motion to

dismiss, a court takes as true all inferences that can be derived from the facts alleged.  Kowal, 16

F.3d at 1276.  A court, however, need not accept the inferences drawn by plaintiffs if such

inferences are unsupported by the facts set out in the complaint.  Id.  A court should dismiss a

complaint if plaintiffs can prove no set of facts that would entitle them to relief.  Emoagram SA

v. F. Hoffman Larouche, Ltd., 315 F.3d 338, 343 (D.C. Cir. 2003); Beverly Enterprises v.

Herman, 50 F. Supp. 2d 7, 11 (D.D.C. 1999).

Alternatively, summary judgment pursuant to Fed. R. Civ. P. 56(c) is appropriate because

the record shows that there is no genuine issue as to any material fact and the DOL Defendants

are entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 587 (1986).

**B.    Plaintiffs Have Failed to Justify Their Entitlement to the Extraordinary Remedy of Mandamus.**

Plaintiffs are not entitled to mandamus relief in this case.  The Mandamus and Venue Act

of 1962 ("The Mandamus Act") states that "the district courts shall have original jurisdiction of

any action in the nature of mandamus to compel an officer or employee of the United States or

any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  The Court's

decision whether or not to exercise mandamus jurisdiction is discretionary.  Cartier v. Secretary

of State, 506 F.2d 191, 199 (D.C. Cir. 1974) (citation and footnote omitted), cert. denied, 421

U.S. 947 (1975).

"It is well established that '[m]andamus is an extraordinary remedy to be utilized in only

the clearest and most compelling cases."  Danielsen v. Dole, 746 F. Supp. 160, 166 (D.D.C.

1990) (quoting <u>Cartier</u>, 506 F.2d at 199), <u>aff'd in part, dismissed in part</u>, 946 F.2d 1564 (D.C.

Cir. 1991). To meet the mandamus standard, Plaintiffs must establish that there is: (1) a clear

right to the relief they seek; (2) a plainly defined and nondiscretionary duty on the part of the

defendant; and (3) no other adequate remedy available. <u>In re Medicare Reimbursement</u>

<u>Litigation</u>, 414 F.3d 7, 10 (D.C. Cir. 2005); <u>see also</u> <u>Ganem v. Heckler</u>, 746 F.2d 844, 852 (D.C.

Cir. 1984) (noting that mandamus is "an extraordinary remedy . . . [that] generally will not issue

unless . . ." these requirements are met) (citing <u>Heckler v. Ringer</u>, 466 U.S. 602, 616 (1984)

(other citations omitted).

     Without conceding that Plaintiffs have satisfied any of the requirements for mandamus

relief,[5] it is readily apparent that Plaintiffs cannot meet the second requirement for mandamus

relief because the Secretary of Labor has no clearly defined or specific duty under the Act to

enforce a wage determination resulting from a substantial variance hearing.

     **1.**    **The Secretary Does Not Have Any Authority to Take Action Against DHS.**

     While the SCA authorizes the Secretary of Labor to enforce the payment of prevailing

wages and fringe benefits against government contractors, 41 U.S.C. § 353(a), it does not

provide <u>any</u> mechanism for the enforcement of the Secretary's determinations against a

government agency. Here, the Secretary fulfilled its obligations when, by letter dated August 16,

2006, the Director informed DHS that the ALJ's ordered rates had been applied to DHS' contract

with U.S. Protect, effective March 7, 2006. Ex. B. However, the Secretary does not have the

---

     [5]Indeed, as to the first requirement, <u>i.e.,</u> a clear right to the relief sought, "[i]t is well-established . . . that the SCA does not confer a private right of action, but rather provides for <u>exclusive</u> administrative enforcement with the Secretary of Labor." <u>Danielsen</u>, 746 F. Supp. at 166 (citations omitted). Thus, by instituting this action seeking mandamus relief, Plaintiffs seek what in fact they could not obtain pursuant to the SCA directly.

authority to take action against DHS to enforce the ALJ's ordered rates, as sought in Plaintiff's complaint. Compl. at 7. Therefore, to the extent Plaintiffs seek to compel the DOL Defendants to take action against DHS, no such action is permissible.

**2.     Mandamus Is Not Appropriate Because DOL's Decision to Seek Enforcement of the Order Against U.S. Protect is Discretionary.**

Mandamus relief is only necessitated where there is a clear duty to act. The requirement of a clear duty to act has been interpreted to mean that the duty of the federal officer sued must be "ministerial, plainly defined and peremptory." Jeno's Inc. v. Commissioner of Patents and Trademarks, 498 F. Supp. 472, 476 (D. Minn.1980) (citation omitted). As the Supreme Court has stated, "the extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of 'a clear nondiscretionary duty.'" Pittson Coal Group v. Sebben, 488 U.S. 105, 121 (1988) (quoting Heckler v. Ringer, 466 U.S. 602, 616 (1984)). Accord Nova Stylings, Inc. v. Ladd, 695 F.2d 1179, 1180 (9th Cir. 1983). See also Welch v. Donovan, 551 F. Supp. 809, 810-11 (D.D.C. 1982). Thus, the law is "well settled that a writ of mandamus is not available to compel discretionary acts." Cox v. Secretary of Labor, 739 F. Supp. 28, 30 (D.D.C. 1990) (citations omitted).

Despite the allegation in their complaint that "Defendants Chao and DeCamp had a clear, nondiscretionary duty to enforce the [ALJ] decision . . . ." Compl. ¶ 21, Plaintiffs can point to no statutory provisions contained in the SCA to support this blanket assertion. Indeed, no such mandatory duty exists. See, e.g., Danielsen, 746 F. Supp. at 167-68 ("[D]espite plaintiffs' assertions to the contrary, neither the Secretary of Labor nor the Secretary of the Navy have a clearly defined or specific duty under the SCA to enforce retroactive wage determinations or to institute enforcement proceedings in every case."). Rather, any authority that the Secretary of

7

Labor has to enforce the Act is discretionary, not mandatory.  And, the Supreme Court "has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's <u>absolute</u> discretion."  <u>Heckler v. Cheney</u>, 470 U.S. 821, 831 (1985) (citations omitted) (emphasis added).  As the Court stated:

> [A]n agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all.  An agency generally cannot act against each technical violation of the statute it is charged with enforcing.  The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.

<u>Id.</u> at 831-32.

While the SCA contains no mandatory language requiring the Secretary to act, "even in an area generally left to agency discretion, there may well exist statutory or regulatory standards delimiting the scope or manner in which such discretion can be exercised.  In these situations, mandamus will lie when the standards have been ignored or violated."  <u>Barron v. Reich</u>, 13 F.3d 1370, 1376 (9th Cir. 1994) (citation omitted).  However, as the <u>Barron</u> court found, nothing in the SCA "imposes a duty on the Secretary of Labor to investigate every claim of alleged underpayment which is made by an employee, or to take an employer to task every time a violation is found."  <u>Id.</u> at 1375.  <u>See also</u> <u>Danielsen</u>, 746 F. Supp. at 168 (finding that the Secretary does not have a clearly defined or specific duty under the [Service Contract Act] to . . . institute enforcement proceedings in every case.").

8

Of particular significance here, the explicit terms of the SCA vest the Secretary of Labor

with discretion regarding the handling of any underpayments to contracted employees:

> Any violation of any of the contract stipulations required by
> section 351(a)(1) or (2) or of section 351(b) of this title shall render
> the party responsible therefor liable for a sum equal to the amount
> of any deductions, rebates, refunds, or underpayment of compensation
> due to any employee engaged in the performance of such contract.
> So much of the accrued payment due on the contract or any other
> contract between the same contractor and the Federal Government
> may be withheld as is necessary to pay such employees.  Such withheld
> sums shall be held in a deposit fund.  On order of the Secretary,
> any compensation which the head of the Federal agency or the
> Secretary has found to be due pursuant to this chapter shall be paid
> directly to the underpaid employees from any accrued payments
> withheld under this chapter.

41 U.S.C. § 352(a) (emphasis added).  Section 352 further provides that only "the Federal

agency head or the Secretary is hereby authorized to carry out the provisions of this section."  41

U.S.C. § 352(b).[6]  Notably, the applicable DOL regulations specifically reinforce the

discretionary nature of bringing enforcement actions under the Act: "Enforcement proceedings

under the Service Contract Act . . . may be instituted by the Associate Solicitor for Fair Labor

Standards or a Regional Solicitor . . . ."  29 C.F.R. § 6.15(a) (emphasis added).  As the Barron,

court concluded, "[t]he language used in the enforcement provisions of the SCA is thus a far cry

from the mandatory language relied upon by courts which have found that issuance of a writ may

be warranted."  13 F.3d at 1375 (citations omitted).  Because Plaintiffs cannot point to any

---

[6]While 41 U.S.C. section 354(b) authorizes a limited cause of action to recover
underpayments, it contains no mandate to do so.  See 41 U.S.C. § 354(b) ("If the accrued
payments withheld under the terms of the contract are insufficient to reimburse all service
employees with respect to whom there has been a failure to pay the compensation required . . .
the United States may bring action against the contractor, subcontractor, or any sureties in any
court of competent jurisdiction to recover the remaining amount of underpayments.") (emphasis
added).

nondiscretionary duty by the Defendants to act, and cannot show that the Defendants have, "in the exercise of their discretion, strayed outside the bounds of the SCA[,]" their request for a writ of mandamus should be denied.  Id. at 1376 (holding that any duty the Secretary of Labor had to investigate an alleged underpayment beyond the two-year limit employed by the Administrator was discretionary, not ministerial and thus mandamus was not appropriate because it can only be afforded "when an official has failed to perform a duty which is clearly ministerial.").

**C.    Alternatively, Summary Judgment is Warranted Because DOL Has Performed All the Actions It Was Required to Perform.**

As an alternative to dismissal, summary judgment is warranted because DOL has performed to the extent of its duties.  Specifically, to the extent Plaintiffs seek to require the DOL Defendants to "issue a directive to DHS to comply with the Decision . . . ." Compl. ¶ 16, this action has already been performed.  By letter dated August 16, 2006, Mr. William W. Gross, Director of DOL's Office of Wage Determinations, notified DHS "of the application of [the revised rates per the ALJ's Decision and Order] to the referenced contract."  Ex. B, at 2.  Mr. Gross further informed DHS that the new rates "are to be paid effective March 7, 2006, the date of the ALJ *Decision and Order*."  Id.  This letter complied with the ALJ's order that "the Administrator of the [DOL's] Wage and Hour Division . . . promptly issue a new wage determination . . . ."  Ex. A, at 5.  Thus, because the DOL Defendants have fully performed any duties they might be required to perform, summary judgment is warranted in their favor because there is no further action that the DOL Defendants can be compelled to take.  See, e.g., Danielsen, 746 F. Supp. at 169 (court noted that even if plaintiffs could establish entitlement to mandamus relief, which they could not, in light of actions taken by the Secretary of Labor, the court "would exercise its discretion to deny plaintiffs' petition based on equitable considerations

10

. . . [as] '[t]he exercise of power of mandamus is a matter committed to the sound discretion of

the Court . . . and the remedy is to be restricted to exigent circumstances.") (citations omitted).

## CONCLUSION

For the reasons set forth above, the DOL Defendants ask that this action be dismissed

against them, or in the alternative, that summary judgment be entered in their favor.

Dated: June 25, 2007

Respectfully submitted,

_____/s/ Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____/s/ Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

_____/s/ Michelle N. Johnson_____
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANTS

Of Counsel:

JONATHAN L. SNARE
Acting Solicitor of Labor
STEVEN J. MANDEL
Associate Solicitor
WILLIAM C. LESSER
Deputy Associate Solicitor
JONATHAN M. KRONHEIM

Counsel for Trial Litigation
JENNIFER R. MARION
Attorney
United States Department of Labor
Officer of the Solicitor
Room N-2716
200 Constitution Avenue, N.W.
Washington, DC 20210

# EXHIBIT A

**U.S. Department of Labor**     Office of Administrative Law Judges
50 Fremont Street - Suite 2100
San Francisco, CA 94105

(415) 744-6577
(415) 744-6569 (FAX)



**Issue Date: 07 March 2006**

Case Number: 2006-CBV-00002

In the Matter of:

**THE APPLICABILITY OF WAGE RATES COLLECTIVELY BARGAINED
BY U. S. PROTECT, INC., AND THE UNITED GOVERNMENT SECURITY
OFFICERS OF AMERICA (UGSOA) LOCAL NO. 52 UNDER A CONTRACT
FOR SECURITY OFFICERS IN SAN DIEGO, CALIFORNIA**

Appearances

James D. Carney
Senior Vice President
United Government Security Officers of America
8620 Wolff Court, Suite 210
Westminister, Colorado  80031
        For Local 52 of the United Government Security Officers of America

Before:  Paul A. Mapes
        Administrative Law Judge

## DECISION AND ORDER

        The above-captioned matter arises from a petition by Local 52 of the United Government Security Officers of America (UGSOA) for a hearing under the provisions of  subsection 4(c) of the McNamara-O'Hara Service Contract Act, 41 U.S.C. §353 (c), concerning wages paid to its members pursuant to a collective bargaining agreement between Local 52 and US Protect Corporation.  The members of Local 52 and US Protect have been providing security services for federal facilities in the vicinity of San Diego, California, since at least September of 2003. Although the procurement contract between the United States and US Protect was originally issued by the General Services Administration, responsibility for administering the contract was subsequently transferred to the Department of Homeland Security (DHS).

        On December 14, 2005, the Deputy Administrator of the Employment Standards Administration issued an Order of Reference pursuant to the provisions of 29 C.F.R. §4.10(c) and thereby transmitted the UGSOA's request to the Office of Administrative Law Judges for a hearing.  Accordingly, in a notice issued on January 10, 2006 all interested persons, including US Protect and the Department of Homeland Security (DHS), were informed that a pre-hearing

conference and a hearing would be held in San Diego on February 8, 2006. However, when the pre-hearing conference convened, the only entity entering an appearance was the petitioner, UGSOA.[1] After the hearing convened, UGSOA presented the testimony of three witnesses and submitted 25 exhibits, which have been admitted into evidence as Exhibits (EX) 1-25. On February 15, 2006, UGSOA also submitted a post-hearing brief. An expedited transcript of the hearing was received by the Office of Administrative Law Judges on February 27, 2006.

## BACKGROUND

In general, the Service Contract Act ("SCA") requires that every federal government contract in excess of $2,500 for a principal purpose of procuring services must contain a provision specifying the minimum hourly and fringe benefit amounts that are to be paid to the various categories of service employees working on such a contract. *See* 41 U.S.C. §§351(a)(1), (a)(2). These minimum wages and fringe benefits are predetermined by the Wage and Hour Division of the Employment Standards Administration, which has been designated by the Secretary of Labor to administer the SCA.

Under the SCA, two types of wage schedules (which are also known as "wage determinations") are prepared for inclusion in service contracts. The first type is a general wage determination, and the wages and fringe benefits contained in such a schedule are based on the rates which Wage and Hour Division surveys have found to be prevailing for the various classifications of service employees to be employed on the contract in the locality where the contract is to be performed. 41 U.S.C. §351(a)(1) and (2). These wage determinations are sometimes called "prevailing in the locality" wage determinations. The second type of wage determination is issued at locations where there is a collective bargaining agreement between the service employees and an employer that has been awarded a procurement contract subject to the SCA. In these circumstances, the Wage and Hour Division is required by the SCA to specify the wage and fringe benefit rates from the collective bargaining agreement (including prospective increases) as the required minimum amounts payable to the service employees working under the terms of the procurement contract. *Id.*

In addition to the foregoing requirements, subsection 4(c) of the SCA contains a special provision that applies when (1) there has been a prior contract involving substantially the same services and (2) the wages for the employees working on the earlier contract were set pursuant to a collective bargaining agreement. In particular, subsection 4(c) specifies that:

No contractor or subcontractor under a contract, which succeeds a contract subject to this chapter and under which substantially the same services are furnished, shall pay any service employee under such contract less than the wages and fringe benefits, including accrued wages and fringe benefits, and any prospective

---

[1] The failure of the DHS to appear was explained in a January 30, 2006 letter to the undersigned Administrative Law Judge from Aaron T. Marshall, an Associate Legal Advisor in the U.S. Immigration and Customs Enforcement component of the DHS. According to the letter, DHS had received notice of the hearing but elected not to appear because it does not "intervene in labor disputes between agency contractors and their unions." Although US Protect did not provide a written explanation for its failure to appear, its General Counsel did confirm in a telephone conversation with the undersigned's law clerk that US Protect had received the hearing notice and had elected not to participate in the hearing.

increases in wages and fringe benefits provided for in a collective-bargaining agreement as a result of arm's length negotiations, to which such service employees would have been entitled if they were employed under the predecessor contract: *Provided, That in any of the foregoing circumstances such obligations shall not apply if the Secretary finds after a hearing in accordance with regulations adopted by the Secretary that such wages and fringe benefits are substantially at variance with those which prevail for services of a character similar in the locality.*

41 U.S.C. §353(c) (emphasis added).

## ANALYSIS

In this case, the UGSOA argues that the wages and fringe benefits currently being paid to members of Local 52 under the terms of its contract with US Protect are substantially less than the wages and fringe benefits prevailing for other security workers providing comparable services in the vicinity of San Diego.[2]  Thus, the UGSOA contends, the italicized passage from subsection 4(c) entitles the members of Local 52 to have their wages increased to a level equal to the wages prevailing for the other San Diego-area security guards performing comparable work.[3] In particular, the union contends that wages for the members of Local 52 employed by US Protect should be increased from $18.50 per hour of straight time to $21.54 per straight-time hour and that their fringe benefit payments should be increased from $2.56 per hour to $2.86 per hour. Tr. at 20-22, 36-37, EX 10 to EX 14. Because no other interested party elected to appear at the hearing to oppose this request, it is permissible to grant the request. *See* 29 C.F.R. §6.7 (b) (specifying that if a party fails to appear at a hearing governed by the provisions of 29 C.F.R. Part 6, the presiding Administrative Law Judge may "find the facts as alleged in the complaint"). Moreover, the UGSOA's request is well supported by the testimony of three witnesses who described the similarities between the work performed by members of Local 52 and the work performed by other workers who are classified as Security Guard II and Court Security Officers. Tr. at 45-56 (testimony of John Reed), Tr. at 60-71  (testimony of Todd Stillman), Tr. at 72-152

---

[2] In this regard, it is noted that the testimony and exhibits indicate that there was at least one predecessor procurement contract involving substantially the same services and that the wages paid under that predecessor contract were less than the wages being paid under the current contract. *See* EX 6 (collective bargaining agreement) and EX 22 (predecessor contract).

[3] It is recognized that the United States Court of Appeals for the Fourth Circuit has determined that subsection 4(c) does not authorize the Secretary of Labor to set aside the wage and benefit provisions of a collective bargaining agreement if, as in this case, the wages and benefits in the agreement are less than the prevailing rates in the same locality for similar work. *See Gracy v. International Brotherhood of Electrical Workers, Local Union No. 1340,* 868 F.2d 671 (4th Cir. 1989). It is further recognized that the Administrator of the Wage and Hour Division subsequently adopted the *Gracy* decision's interpretation of subsection 4(c). However, in 2003 the Administrator's interpretation was rejected by the Administrative Review Board. *See In re: Substantial Wage Variance Between Local Collective Bargaining Agreement Wage and Local Prevailing Wage Determination No. 94-2419 (Rev. 18),* ARB No. 02-012 (ARB Sept. 29, 2003). Hence, the ARB follows the *Gracy* holding only in cases arising in the Fourth Circuit and Department of Labor Administrative Law Judges must apply the ARB's interpretation of subsection 4(c) in cases arising in all the other federal circuits. *Id.* at 8, n. 5. Because the contract in this proceeding concerns services performed in the State of California, this case arises in the Ninth Circuit.

(testimony of Mike Hough).  In addition, the prevailing wage suggested by the UGSOA is consistent with the results of Department of Labor surveys showing the wages prevailing for security workers in the vicinity of San Diego. Tr. at 36-37, EX 10 to EX 14.  It is further noted that the differential between the current hourly wage and the prevailing hourly wage (16.4 percent or approximately $6,000 per year) is substantial. Accordingly, it is concluded that UGSOA has made the necessary "clear showing" that the compensation being paid to members of Local 52 for providing services covered by the current procurement contract with US Protect for the San Diego vicinity must be immediately increased to $21.54 per straight-time hour and that fringe benefits payments for these workers must be simultaneously increased to $2.86 per hour.

In addition to seeking an immediate adjustment in the wages and fringe benefits being paid to the members of Local 52, UGSOA is also asking that its proposed wage increases be made retroactive to October 1, 2005.  As grounds for this request, UGSOA points out that it filed its petition in this case on September 1, 2005, but, despite regulations contemplating that the Administrator will act on such petitions within 30 days, no referral to the Office of Administrative Law Judges was made until December 14, 2005, thereby delaying the hearing in this matter until February of 2006. *See* 29 C.F.R. §4.10 (b)(2).  Moreover, the UGSOA argues, its efforts to initiate this proceeding were hampered by a refusal by DHS to provide the union with information concerning the details of its current procurement contract with US Protect. *See* EX 2, EX 3, 29 C.F.R. §4.1b (b)(3).

The UGSOA certainly has good reason to be disappointed by the lack of responsiveness to its legitimate requests by the Department of Homeland Security and the Employment Standards Administration.  However, the regulations governing proceedings under subsection 4(c) of the SCA unequivocally indicate that when, as in this case, a procurement contract has already gone into effect, it is clearly impermissible for a new wage determination to be put into effect prior to the date of an Administrative Law Judge's decision concerning that wage determination. In particular, 29 C.F.R. §4.1b (a) provides in relevant part:

> If the contract has been awarded and work begun prior to a finding that the wages and/or fringe benefits in a collective bargaining agreement are substantially at variance with those prevailing in the locality, the payment obligation of such contractor or subcontractor with respect to the wages and fringe benefits contained in the new wage determination shall be applicable as of the date of the Administrative Law Judge's decision or, where the decision is reviewed by the Administrative Review Board, the date of the decision of the Administrative Review Board.  (See also Sec. 4.163 (c).).

Accordingly, the UGSOA's request that the new wage determination go into effect prior to the date of this Decision and Order must be denied.

- 4 -

**ORDER**

Pursuant to the provisions of 29 C.F.R. §4.163(c), the Administrator of the Department of Labor's Wage and Hour Division is hereby directed to promptly issue a new wage determination in accordance with this Decision and Order.

A

Paul A. Mapes
Administrative Law Judges

**NOTICE OF RIGHT TO APPEAL**  Within 10 days after the date of this Decision and Order, any interested party who participated in the hearing that desires review of the decision must file a petition for review with the Administrative Review Board pursuant to 29 C.F.R. Part 8.  The petition shall refer to the specific findings of fact, conclusions of law, or order excepted to and the specific pages of transcript relevant to the petition for review.  29 C.F.R. § 6.57.  The Administrative Review Board may be served at: Administrative Review Board, U.S. Department of Labor, Room S-4309, 200 Constitution Ave., N.W., Washington, D.C. 20210.  Pursuant to the provisions of 29 C.F.R. §6.7(b), petitions for review of default judgments by a party that did not appear at the hearing are permitted to allege procedural irregularities in the proceeding but are

# EXHIBIT B

**U.S. Department of Labor**     Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210



AUG 1 6 2006

Mr. Kevin C. Schreiber
Contract Specialist
Federal Protective Service
Immigration and Customs Enforcement
Department of Homeland Security
P.O. Box 25266
Denver Federal Center, Bldg. 44
Denver, Colorado 80225

Dear Mr. Schreiber:

This is a follow-up to a telephone conversation between yourself and Ms. Michelle M.
Bechtoldt of my staff regarding the implementation of a *Decision and Order* in Case
Number 2006-CBV-00002, dated March 7, 2006, copy enclosed, relating to the wages
and benefits to be paid to security guards employed on Contract Number GS-09P-00-
NZD-0002 at various locations in Imperial, Riverside, San Bernardino, and San Diego
Counties, California.

The McNamara-O'Hara Service Contract Act (SCA) requires that service employees
engaged in the performance of a covered service contract receive no less than the
minimum monetary wages and fringe benefits determined by the Secretary of Labor. The
SCA wage determination shall reflect the wage rates and fringe benefits prevailing in the
locality where the contract service work is to be performed, unless the provisions of
section 4(c) of the Act apply. A section 4(c) wage determination shall reflect the wage
rates and fringe benefits (including any accrued or prospective wage rates and fringe
benefits) set forth in the predecessor contractor's collective bargaining agreement (CBA)
as a result of arm's-length negotiations. The provisions of section 4(c), however, shall
not apply to the successor contract period if the applicable CBA wages and fringe
benefits are determined by the Secretary of Labor after a hearing to be substantially at
variance with those prevailing for services of a character similar in the locality, or to not
have been reached as a result of arm's-length negotiations.

In the instant case, the United Government Security Officers of America (UGSOA) Local
Union No. 52 requested a section 4(c) hearing by alleging that the CBA rates the union
negotiated with U.S. Protect, Inc., and issued pursuant to sections 2(a) and 4(c) of the
SCA for the contract in question, were substantially at variance with the prevailing rates

-2-

for like services in the locality. In its *Decision and Order*, the ALJ determined that the referenced CBA rates were substantially at variance with those otherwise prevailing for services of a character similar in the locality. Consequently, the ALJ ordered that the following rates be paid to security officers employed on the contract:

| Classification | Minimum Wage Rate | Fringe Benefits |
|---|---|---|
| Security Officers | $21.54 | $2.86 per hour |

This letter serves to notify you of the application of these rates to the referenced contract. These rates are to be paid effective March 7, 2006, the date of the ALJ *Decision and Order*.

If you should have further questions, please feel free to contact Ms. Michelle Bechtoldt of my staff at (202) 693.0510.

Sincerely,

William W. Gross
Director, Office of
    Wage Determinations

Enclosure

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In Re: UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA, LOCAL NO. 52, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ELAINE CHAO, Secretary, United States Department of Labor, et al., <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 07-0173 (CKK) |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to LCvR 56.1 and 7(h), Defendants Elaine Chao, Secretary, United States

Department of Labor ("DOL"), and Paul DeCamp, Administrator, Wage and Hour Division,

DOL, respectfully submit this statement of material facts as to which there is no genuine issue in

support of their Motion for Summary Judgment.

1.      The United Government Security Officers of America ("UGSOA") Local 52 and

the UGSOA International Union are the certified bargaining unit representatives for the

employees of U.S. Protect.  Compl. ¶ 2.  Since approximately September 2003, U.S. Protect

employees have provided security services at various federal facilities in the San Diego,

California vicinity.  Id. ¶¶ 2-3.

2.      Administration of the service contract with U.S. Protect falls within the purview

of the Federal Protective Service, part of the United States Department of Homeland Security

("DHS").  Id. ¶ 3.

3.      On December 14, 2005, the Deputy Administrator of the Employment Standards Administration issued an Order of Reference pursuant to the provisions of 29 C.F.R. section 4.10(c) of the McNamara-O'Hara Service Contract Act of 1965, as amended, 41 U.S.C. § 351, et seq. ("the SCA" or "the Act"), thereby transmitting UGSOA's request to the Office of Administrative Law Judges for a substantial variance hearing.  Exhibit A (Decision and Order dated March 7, 2006), at 1.

4.      In a notice issued January 10, 2006, all interested persons, including U.S. Protect and DHS, were informed that a pre-hearing conference and a hearing would be held in San Diego on February 8, 2006.  Id. at 1-2.  Only UGSOA entered an appearance at the pre-hearing conference.  Id. at 2.

5.      At the hearing, UGSOA presented testimony from three witnesses and twenty-five exhibits.  Id.  UGSOA contended that the wages for members of Local 52 employed by U.S. Protect should be increased from $18.50 per hour of straight time to $21.54 per hour and that their fringe benefit payments should be increased from $2.56 per hour to $2.86 per hour.  Id. at 3.

6.      In a Decision and Order dated March 7, 2006, the administrative law judge ("ALJ") granted UGSOA the relief it sought.  Specifically, the ALJ found that "[b]ecause no other interested party elected to appear at the hearing to oppose [UGSOA's] request, it [was] permissible to grant the request."  Id. (citing 29 C.F.R. § 6.7(b)).  In addition, the ALJ found that UGSOA's request had been supported by the testimony of its three witnesses and that the prevailing wage UGSOA suggested was "consistent with the results of Department of Labor surveys showing the wages prevailing for security workers in the vicinity of San Diego."  Id. at 4.

7.      The ALJ ordered the Administrator of the Department of Labor's Wage and Hour

Division to "promptly issue a new wage determination in accordance with [his] Decision and

Order." Id. at 5.

8.      By letter dated August 16, 2006, the Administrator's authorized representative,

the Director of the Office of Wage Determinations, notified the contracting agency that the Wage

and Hour Division had applied the rates ordered by the ALJ to the contract and that the rates

were to be paid retroactive to the date of the ALJ's Decision and Order.  Exhibit B, Letter to Mr.

Kevin C. Schreiber, Contract Specialist, Federal Protective Service, Immigration and Customs

Enforcement, DHS dated August 16, 2006.


Dated: June 25, 2007

                              Respectfully submitted,

                                  /s/ Jeffrey A. Taylor
                              JEFFREY A. TAYLOR, D.C. BAR # 498610
                              United States Attorney

                                  /s/ Rudolph Contreras
                              RUDOLPH CONTRERAS, D.C. BAR #  434122
                              Assistant United States Attorney

                                 /s/ Michelle N. Johnson
                              MICHELLE N. JOHNSON, D.C. BAR # 491910
                              Assistant United States Attorney
                              United States Attorney's Office
                              Civil Division
                              555 4th Street, N.W. – Room E4212
                              Washington, D.C. 20530
                              (202) 514-7139

                              COUNSEL FOR DEFENDANTS


Of Counsel:

JONATHAN L. SNARE
Acting Solicitor of Labor
STEVEN J. MANDEL

Associate Solicitor
WILLIAM C. LESSER
Deputy Associate Solicitor
JONATHAN M. KRONHEIM
Counsel for Trial Litigation
JENNIFER R. MARION
Attorney
United States Department of Labor
Officer of the Solicitor
Room N-2716
200 Constitution Avenue, N.W.
Washington, DC 20210
Office of the Solicitor
Washington, DC 20210

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In Re: UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA, LOCAL NO. 52, <u>et</u> <u>al</u>., ) ) ) ) | |
| Plaintiffs, ) ) | Civil Action No. 07-0173 (CKK) |
| ) | |
| v. ) ) | |
| ELAINE CHAO, Secretary, United States Department of Labor, <u>et</u> <u>al</u>., ) ) ) ) | |
| Defendants. ) ) | |

<u>**ORDER**</u>

This matter having come before this Court on Defendants' Elaine Chao, Secretary of the

United States Department of Labor ("DOL"), and Paul DeCamp, Administrator, Wage and Hour

Division, DOL, (collectively referred to herein as the "DOL Defendants") Motion to Dismiss, or

in the Alternative, for Summary Judgment, it is hereby

**ORDERED** that DOL Defendants' motion is **GRANTED**.  It is further

**ORDERED** that the Complaint is hereby **DISMISSED** as it pertains to Defendants

Elaine Chao and Paul DeCamp.

**SO ORDERED** this _____ day of _____, 200__.

_____
COLLEEN KOLLAR-KOTELLY
United States District Court Judge