IN THE UNITED STATES DISTICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re: UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA LOCAL NO. 52,<br>Serve: UGSOA<br>       8620 Wolff Court, Suite 210<br>       Westminster, CO 80031<br><br>and<br><br>UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA, INTERNATIONAL UNION<br>8620 Wolff Court, Suite 210<br>Westminister, CO 80031<br><br>       Plaintiffs/Petitioners,<br><br>       -vs-<br><br>MICHAEL CHERTOFF, Secretary of the U.S. Department of Homeland Security, (in his official capacity)<br>U.S. Department of Homeland Security<br>Washington, D.C. 20528<br><br>and<br><br>PAUL R. DURETTE,<br>Acting Director, Federal Protective Service, U.S. Department of Homeland Security (in is official capacity)<br>U.S. Department of Homeland Security<br>Washington, D.C. 20528<br><br>       Defendants/Respondents. | Case No. 07-0173(CKK) |

**FIRST AMENDED COMPLAINT**

**INTRODUCTION**

1

Now come the United Government Security Officers of America, International Union and its Local No. 52 (collectively "UGSOA"), Plaintiffs/Petitioners in the above captioned action, and hereby petition via their First Amended Complaint, this Court for a Writ of Mandamus to compel Michael Chertoff, the Secretary of the Department of Homeland Security ("Chertoff"), and Paul R. Durette, the Acting Director, Federal Protective Service, ("Durette") of the U.S. Department of Homeland Security in their official capacity, to enforce and/or comply with the Decision and Order ("Decision") of ALJ Paul Mapes entered in Case No. 2006-CBV-00002 dated March 7, 2006, a copy of which is attached hereto as Exhibit A. The Plaintiffs further seek a declaration of the obligation of Chertoff and Durette under the Decision.

## JURISDICTION AND VENUE

1.    Plaintiff brings this claim for a declaratory judgment under Federal Rule of Civil Procedure 57, the Service Contract Act ("SCA") 41 U.S.C. §§351, et seq., and 28 U.S.C. §§2201, 2202. This court has jurisdiction over this matter pursuant to 28 U.S.C. §1361 and 28 U.S.C. §1331, and venue is proper in the U.S. District Court for the District of Columbia.

## PARTIES

2.    The UGSOA International Union and its Local 52 are the certified bargaining unit representative for security officers employed by U.S. Protect in the counties of San Diego, San Bernardino, Riverside and Imperial (hereinafter "Counties") in the state of California who provide security services at various federal facilities in the same counties via U.S. Protect's service contract (Service Contract Number GS-09P-00-NZD-00002) with the Federal Protective Service.

3. Defendant Michael Chertoff is the Secretary of the Department of Homeland Security and is sued in his official capacity only. The Department of Homeland Security ("DHS") is a federal agency responsible for protection and security within the United States borders. It is the parent agency for the Federal Protective Service ("FPS"), the subordinate agency responsible for providing security services for federal buildings.

4. Defendant Paul R. Durette is the Acting Director of the FPS and is sued in his official capacity only. The FPS is a subordinate agency operating within the Bureau of Immigration and Customs Enforcement, which is an agency operating within DHS. FPS contracts with private-sector security companies to provide guard and security services to federal buildings, including contracting with U.S. Protect to provide guard services in the California counties of San Diego, San Bernadino, Riverside and Imperial.

## STATEMENT OF FACTS

5. Since on or about September 2003 the members of the UGSOA employed by U.S. Protect, numbering approximately 140, have been providing security services for the DHS at various federal facilities in the aforementioned Counties pursuant to the service contract between DHS and U.S. Protect. The responsibility for the administration of the service contract under which U.S. Protect provides these services rests with the Federal Protective Service, a division of the Department of Homeland Security ("DHS").

6. On or about September 1, 2005, the UGSOA filed a petition for a hearing under the provisions of subsection 4(c) of the Service Contract Act, 41 U.S.C. §353,

regarding the wages paid to its members covered by the CBA between the UGSOA and U.S. Protect.

7. On or about December 14, 2005, the Deputy Administrator of the Employment Standards Administration issued an Order of Reference pursuant to the provisions of 29 C.F.R. §410(c) and thereby transmitted the request to the Office of Administrative Law Judges for a hearing.

8. On or about January 10, 2006, all interested persons, including U.S. Protect and DHS were informed that a pre-hearing conference and a hearing would be held in San Diego, California on February 8, 2006.

9. On or about February 8, 2006, a wage variance hearing was held in San Diego, California on the petition filed by the UGSOA in accordance with Part 4, Section 4.10, of Title 29 C.F.R., and Part 6 of the same Title. Upon convening the hearing, the UGSOA presented its witnesses and exhibits and thereafter on or about February 25, 2006, submitted its post hearing brief. The only party entering an appearance at the hearing was the UGSOA.

10. On or about March 7, 2006, Administrative Law Judge Paul A. Mapes ("ALJ") issued his Decision and Order requiring that: "Pursuant to the provisions of 29 C.F.R. §4.163(c) the Administrator of the Department of Labor's Wage and Hour Division is hereby directed to promptly issue a new wage determination in accordance with this Decision and Order."

11. The DHS received notice of Judge Mape's decision and thereafter did not file an appeal of the ALJ's Decision.

4

12. In April 2006, James D. Carney, Senior Vice President of the UGSOA International Union contacted Bonnie Burnish, Wage Specialist for the San Francisco Regional office of the Department of Labor, regarding the application and enforcement of the referenced ALJ's decision. Ms. Burnish agreed that the Order should be enforced but stated that Department of Labor ("DOL") personnel in Washington, D.C. would have to approve enforcement of the Order.

13. In June 2006, Mr. Carney contacted William W. Gross in Washington, D.C., the Director for the DOL office of Wage Determinations regarding enforcement of the Decision. Mr. Gross advised Mr. Carney that the Order should be enforced and assured him that the DOL would pursue enforcement against the contacting agency, the DHS.

14. By letter dated August 16, 2006, Mr. Gross advised Kevin Schreiber of the DHS of the ALJ's decision to increase the minimum wage rate to $21.54 p/hr., and the fringe benefits rates to $2.16 p/hr for Security Guards employed on Contract Number GS-09P-00-NZD-00002 at "…various locations in Imperial, Riverside, San Bernardino and San Diego Counties, California." Mr. Gross also noted that, "This letter serves to notify you of the application of these rates to the referenced contract. These rates are to be paid effective March 7, 2006, the date of the ALJ *Decision and Order*."

15. To date, the DHS refuses to comply with the directive of the DOL regarding the ALJ's decision.

16. The Service Contract Act ("SCA") requires, pursuant to 41 U.S.C. §§351(a)(1), (a)(2), that every federal government contract in excess of $2,500.00 for a principal purpose of procuring services must contain a provision specifying the minimum

hourly and fringe benefit amounts that are to be paid to the various categories of service employees working under such contracts. These minimum wage and fringe benefits are predetermined by the Wage and Hour Division of the Employment Standards Administration, which has been designated by the Secretary of Labor to administer the SCA.

17. The DOL and the Administrator of the DOL Wage and Hour Division have a statutory obligation to issue a directive to the DHS to comply with the Decision, which it did via the aforementioned letter of Mr. Gross.

18. The DHS is obligated to comply with the DOL's directive regarding the ALJ's Decision.

19. Plaintiffs have a clear right to the relief requested and the Defendants have a clear duty to act. Moreover, there is no other adequate remedy available to the Plaintiff and the requested relief will provide full relief as to the subject matter in question.

20. Plaintiffs have been damaged by the actions of the Defendants and will continue to incur damages and have no other adequate remedy available to them other than the requested writ of mandamus. Plaintiffs have exhausted all available avenues of relief and the Defendants owe Plaintiffs a clear non-discretionary duty to enforce and comply with the Decision.

## COUNT I

21. Plaintiffs hereby reasserts and reincorporates the allegations listed in Paragraphs 1-20 above as if fully set forth below.

22. On or about March 7, 2006, Plaintiffs received a lawful, final decision in Case No. 2006-CBV-00002 finding a substantial wage variance and ordering that a new

wage determination be issued for member of the UGSOA providing services under service contract number GS-09P-00-NZD-00002 in Imperial, Riverside, San Bernardino and San Diego Counties, California.

23.   Defendants Chertoff and Durette have a clear, non-discretionary duty to comply with the Decision as per the directive of the DOL on August 16, 2006. Defendants, Chertoff and Durette have a clear, non-discretionary duty to adopt and implement the final decision and have failed to execute that legal duty.

24.   Plaintiffs have exhausted all administrative remedies and have no adequate remedy other than appealing to this Court for an order in the nature of mandamus to compel Defendants to enforce and execute the final decision in substantial variance case, Case No. 2006-CBV-00002.

25.   As a result of Defendants' wrongful actions, Plaintiffs have suffered damages through lost wages and benefits and expenses in bringing this action.

## COUNT II

26.   Plaintiffs hereby reasserts and reincorporates the allegations listed in Paragraphs 1-25 above as if fully set forth below.

27.   Declaratory relief is necessary in that a substantial case and/or controversy exists between the Parties as to the meaning, scope and effect of the Decision in that the DHS is refusing to apply the Decision to the Security Guards providing services under DHS' service contract with U.S. Protect in San Bernardino and Riverside Counties, California.

28.   Declaratory relief is further justified in that the Security Guards that the Plaintiffs' represent have and continue to suffer legal injury due to the DHS' unlawful

and arbitrary refusal to comply with the Decision and give it its plain and intended meaning and effect.

29.  Accordingly, the Plaintiffs requests that this Court enter a declaratory judgment as requested herein, which will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to this proceeding. Therefore, Plaintiffs request the following:

A.  That the Court issue a declaration that on or about March 7, 2006, Plaintiffs received a lawful, final Decision in Case No. 2006-CBV-00002 from ALJ Mapes finding a substantial wage variance for the Security Guards represented by the UGSOA and providing services for U.S. Protect under its DHS service contract, number GS-09P-00-NZD-00002, in Imperial, Riverside, San Bernardino and San Diego Counties, California; and that in accordance with the Decision the minimum hourly wage rate to be paid the subject Security Guards pursuant to the Decision is $21.54 p/hr., and the fringe benefits rate is $2.16 p/hr., retroactively payable to March 7, 2006.

B.  A declaration that the DOL's interpretation of the Decision on August 16, 2006 is final and binding upon the DHS and the DHS is obligated to immediately comply with the same without modification.

## PRAYER

Accordingly, the Plaintiffs pray for the following relief:

A.  A declaratory judgment declaring that on or about March 7, 2006, Plaintiffs received a lawful, final Decision in Case No. 2006-CBV-00002 from ALJ Mapes finding a substantial wage variance for the Security Guards represented by the

UGSOA and providing services for U.S. Protect under its DHS service contract, number GS-09P-00-NZD-00002, in Imperial, Riverside, San Bernardino and San Diego Counties, California; and that in accordance with the Decision the minimum hourly wage rate to be paid the subject Security Guards pursuant to the Decision is $21.54 p/hr., and the fringe benefits rate is $2.16 p/hr., retroactively payable to March 7, 2006.

  B. A declaration that the DOL's interpretation of the Decision on August 16, 2006 is final and binding upon the DHS and the DHS is obligated to immediately comply with the same without modification.

  B. Plaintiffs request that the Court issue forthwith and with haste a writ of mandamus directing the DHS and its Director of Federal Protective Service and Immigration and Customs Enforcement to comply with and implement the Decision;

  C. Plaintiffs request an award of pre- and post-judgment interest on their damages from the date of the ALJ Decision through full compliance by the Defendants with the same;

  E. Plaintiffs request an award of all attorneys' fees and costs incurred by Plaintiffs in this matter; and

  F. Plaintiffs request an award of any and all other relief the court may deem appropriate, be it legal or equitable.

## **REQUEST FOR JURY TRIAL**

Plaintiffs request a jury trial for all such matters triable.

Respectfully submitted,

/s/
_____
Leslie Deak, Esq. [PA0009]
**Law Offices of Leslie Deak**
1200 G. Street, N.W.
Suite 800, No. 099
Washington, D.C.  20005
deaklaw@comcast.com

/s/
_____
John A. Tucker (0052055 – OH.S.Ct.)
**John A. Tucker Co., L.P.A.**
1 South Main Street, Suite 301
Akron, OH   44308
Phone:  (330) 253-7100
Fax:     (330) 253-2500
jatucker@jatuckerlaw.com

ATTORNEYS FOR PLAINTIFFS,
INTERNATIONAL UNION, UGSOA and
UGSOA LOCAL 52

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served on the following parties via electronic mail this 27th day of July, 2007.

Michelle Johnson
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C.  20530
Michelle.Johnson@usdoj.gov

/s/
_____
Leslie Deak

10

**U.S. Department of Labor**  Office of Administrative Law Judges
50 Fremont Street - Suite 2100
San Francisco, CA 94105

(415) 744-6577
(415) 744-6569 (FAX)

Issue Date: 07 March 2006

Case Number: 2006-CBV-00002        REC'D MAR 1 0 2006

In the Matter of:

**THE APPLICABILITY OF WAGE RATES COLLECTIVELY BARGAINED
BY U. S. PROTECT, INC., AND THE UNITED GOVERNMENT SECURITY
OFFICERS OF AMERICA (UGSOA) LOCAL NO. 52 UNDER A CONTRACT
FOR SECURITY OFFICERS IN SAN DIEGO, CALIFORNIA**

Appearances

James D. Carney
Senior Vice President
United Government Security Officers of America
8620 Wolff Court, Suite 210
Westminister, Colorado 80031
    For Local 52 of the United Government Security Officers of America

Before: Paul A. Mapes
    Administrative Law Judge

### DECISION AND ORDER

    The above-captioned matter arises from a petition by Local 52 of the United Government Security Officers of America (UGSOA) for a hearing under the provisions of subsection 4(c) of the McNamara-O'Hara Service Contract Act, 41 U.S.C. §353 (c), concerning wages paid to its members pursuant to a collective bargaining agreement between Local 52 and US Protect Corporation. The members of Local 52 and US Protect have been providing security services for federal facilities in the vicinity of San Diego, California, since at least September of 2003. Although the procurement contract between the United States and US Protect was originally issued by the General Services Administration, responsibility for administering the contract was subsequently transferred to the Department of Homeland Security (DHS).

    On December 14, 2005, the Deputy Administrator of the Employment Standards Administration issued an Order of Reference pursuant to the provisions of 29 C.F.R. §4.10(c) and thereby transmitted the UGSOA's request to the Office of Administrative Law Judges for a hearing. Accordingly, in a notice issued on January 10, 2006 all interested persons, including US Protect and the Department of Homeland Security (DHS), were informed that a pre-hearing

conference and a hearing would be held in San Diego on February 8, 2006. However, when the pre-hearing conference convened, the only entity entering an appearance was the petitioner, UGSOA.[1] After the hearing convened, UGSOA presented the testimony of three witnesses and submitted 25 exhibits, which have been admitted into evidence as Exhibits (EX) 1-25. On February 15, 2006, UGSOA also submitted a post-hearing brief. An expedited transcript of the hearing was received by the Office of Administrative Law Judges on February 27, 2006.

## BACKGROUND

In general, the Service Contract Act ("SCA") requires that every federal government contract in excess of $2,500 for a principal purpose of procuring services must contain a provision specifying the minimum hourly and fringe benefit amounts that are to be paid to the various categories of service employees working on such a contract. *See* 41 U.S.C. §§351(a)(1), (a)(2). These minimum wages and fringe benefits are predetermined by the Wage and Hour Division of the Employment Standards Administration, which has been designated by the Secretary of Labor to administer the SCA.

Under the SCA, two types of wage schedules (which are also known as "wage determinations") are prepared for inclusion in service contracts. The first type is a general wage determination, and the wages and fringe benefits contained in such a schedule are based on the rates which Wage and Hour Division surveys have found to be prevailing for the various classifications of service employees to be employed on the contract in the locality where the contract is to be performed. 41 U.S.C. §351(a)(1) and (2). These wage determinations are sometimes called "prevailing in the locality" wage determinations. The second type of wage determination is issued at locations where there is a collective bargaining agreement between the service employees and an employer that has been awarded a procurement contract subject to the SCA. In these circumstances, the Wage and Hour Division is required by the SCA to specify the wage and fringe benefit rates from the collective bargaining agreement (including prospective increases) as the required minimum amounts payable to the service employees working under the terms of the procurement contract. *Id.*

In addition to the foregoing requirements, subsection 4(c) of the SCA contains a special provision that applies when (1) there has been a prior contract involving substantially the same services and (2) the wages for the employees working on the earlier contract were set pursuant to a collective bargaining agreement. In particular, subsection 4(c) specifies that:

> No contractor or subcontractor under a contract, which succeeds a contract subject to this chapter and under which substantially the same services are furnished, shall pay any service employee under such contract less than the wages and fringe benefits, including accrued wages and fringe benefits, and any prospective

---

[1] The failure of the DHS to appear was explained in a January 30, 2006 letter to the undersigned Administrative Law Judge from Aaron T. Marshall, an Associate Legal Advisor in the U.S. Immigration and Customs Enforcement component of the DHS. According to the letter, DHS had received notice of the hearing but elected not to appear because it does not "intervene in labor disputes between agency contractors and their unions." Although US Protect did not provide a written explanation for its failure to appear, its General Counsel did confirm in a telephone conversation with the undersigned's law clerk that US Protect had received the hearing notice and had elected not to participate in the hearing.

increases in wages and fringe benefits provided for in a collective-bargaining agreement as a result of arm's length negotiations, to which such service employees would have been entitled if they were employed under the predecessor contract: *Provided, That in any of the foregoing circumstances such obligations shall not apply if the Secretary finds after a hearing in accordance with regulations adopted by the Secretary that such wages and fringe benefits are substantially at variance with those which prevail for services of a character similar in the locality.*

41 U.S.C. §353(c) (emphasis added).

## ANALYSIS

In this case, the UGSOA argues that the wages and fringe benefits currently being paid to members of Local 52 under the terms of its contract with US Protect are substantially less than the wages and fringe benefits prevailing for other security workers providing comparable services in the vicinity of San Diego.[2] Thus, the UGSOA contends, the italicized passage from subsection 4(c) entitles the members of Local 52 to have their wages increased to a level equal to the wages prevailing for the other San Diego-area security guards performing comparable work.[3] In particular, the union contends that the wages for the members of Local 52 employed by US Protect should be increased from $18.50 per hour of straight time to $21.54 per straight-time hour and that their fringe benefit payments should be increased from $2.56 per hour to $2.86 per hour. Tr. at 20-22, 36-37, EX 10 to EX 14. Because no other interested party elected to appear at the hearing to oppose this request, it is permissible to grant the request. See 29 C.F.R. §6.7 (b) (specifying that if a party fails to appear at a hearing governed by the provisions of 29 C.F.R. Part 6, the presiding Administrative Law Judge may "find the facts as alleged in the complaint"). Moreover, the UGSOA's request is well supported by the testimony of three witnesses who described the similarities between the work performed by members of Local 52 and the work performed by other workers who are classified as Security Guard II and Court Security Officers. Tr. at 45-56 (testimony of John Reed), Tr. at 60-71 (testimony of Todd Stillman), Tr. at 72-152

---

[2] In this regard, it is noted that the testimony and exhibits indicate that there was at least one predecessor procurement contract involving substantially the same services and that the wages paid under that predecessor contract were less than the wages being paid under the current contract. See EX 6 (collective bargaining agreement) and EX 22 (predecessor contract).

[3] It is recognized that the United States Court of Appeals for the Fourth Circuit has determined that subsection 4(c) does not authorize the Secretary of Labor to set aside the wage and benefit provisions of a collective bargaining agreement if, as in this case, the wages and benefits in the agreement are less than the prevailing rates in the same locality for similar work. See *Gracy v. International Brotherhood of Electrical Workers, Local Union No. 1340*, 868 F.2d 671 (4th Cir. 1989). It is further recognized that the Administrator of the Wage and Hour Division subsequently adopted the *Gracy* decision's interpretation of subsection 4(c). However, in 2003 the Administrator's interpretation was rejected by the Administrative Review Board. See *In re: Substantial Wage Variance Between Local Collective Bargaining Agreement Wage and Local Prevailing Wage Determination No. 94-2419 (Rev. 18)*, ARB No. 02-012 (ARB Sept. 29, 2003). Hence, the ARB follows the *Gracy* holding only in cases arising in the Fourth Circuit and Department of Labor Administrative Law Judges must apply the ARB's interpretation of subsection 4(c) in cases arising in all the other federal circuits. *Id.* at 8, n. 5. Because the contract in this proceeding concerns services performed in the State of California, this case arises in the Ninth Circuit.

(testimony of Mike Hough). In addition, the prevailing wage suggested by the UGSOA is consistent with the results of Department of Labor surveys showing the wages prevailing for security workers in the vicinity of San Diego. Tr. at 36-37, EX 10 to EX 14. It is further noted that the differential between the current hourly wage and the prevailing hourly wage (16.4 percent or approximately $6,000 per year) is substantial. Accordingly, it is concluded that UGSOA has made the necessary "clear showing" that the compensation being paid to members of Local 52 for providing services covered by the current procurement contract with US Protect for the San Diego vicinity must be immediately increased to $21.54 per straight-time hour and that fringe benefits payments for these workers must be simultaneously increased to $2.86 per hour.

In addition to seeking an immediate adjustment in the wages and fringe benefits being paid to the members of Local 52, UGSOA is also asking that its proposed wage increases be made retroactive to October 1, 2005. As grounds for this request, UGSOA points out that it filed its petition in this case on September 1, 2005, but, despite regulations contemplating that the Administrator will act on such petitions within 30 days, no referral to the Office of Administrative Law Judges was made until December 14, 2005, thereby delaying the hearing in this matter until February of 2006. See 29 C.F.R. §4.10 (b)(2). Moreover, the UGSOA argues, its efforts to initiate this proceeding were hampered by a refusal by DHS to provide the union with information concerning the details of its current procurement contract with US Protect. See EX 2, EX 3, 29 C.F.R. §4.1b (b)(3).

The UGSOA certainly has good reason to be disappointed by the lack of responsiveness to its legitimate requests by the Department of Homeland Security and the Employment Standards Administration. However, the regulations governing proceedings under subsection 4(c) of the SCA unequivocally indicate that when, as in this case, a procurement contract has already gone into effect, it is clearly impermissible for a new wage determination to be put into effect prior to the date of an Administrative Law Judge's decision concerning that wage determination. In particular, 29 C.F.R. §4.1b (a) provides in relevant part:

> If the contract has been awarded and work begun prior to a finding that the wages and/or fringe benefits in a collective bargaining agreement are substantially at variance with those prevailing in the locality, the payment obligation of such contractor or subcontractor with respect to the wages and fringe benefits contained in the new wage determination shall be applicable as of the date of the Administrative Law Judge's decision or, where the decision is reviewed by the Administrative Review Board, the date of the decision of the Administrative Review Board. (See also Sec. 4.163 (c).).

Accordingly, the UGSOA's request that the new wage determination go into effect prior to the date of this Decision and Order must be denied.

## ORDER

Pursuant to the provisions of 29 C.F.R. §4.163(c), the Administrator of the Department of Labor's Wage and Hour Division is hereby directed to promptly issue a new wage determination in accordance with this Decision and Order.

*Paul A. Mapes*
Paul A. Mapes
Administrative Law Judges

**NOTICE OF RIGHT TO APPEAL**  Within 10 days after the date of this Decision and Order, any interested party who participated in the hearing that desires review of the decision must file a petition for review with the Administrative Review Board pursuant to 29 C.F.R. Part 8. The petition shall refer to the specific findings of fact, conclusions of law, or order excepted to and the specific pages of transcript relevant to the petition for review. 29 C.F.R. § 6.57. The Administrative Review Board may be served at: Administrative Review Board, U.S. Department of Labor, Room S-4309, 200 Constitution Ave., N.W., Washington, D.C. 20210. Pursuant to the provisions of 29 C.F.R. §6.7(b), petitions for review of default judgments by a party that did not appear at the hearing are permitted to allege procedural irregularities in the proceeding but are

## SERVICE SHEET

Case Name: **WAGE and HOUR DIVISION v. US PROTECT, INC. & UNITED GOVERNMENT SEC**

Case Number: **2006CBV00002**

Document Title: **DECISION AND ORDER**

I hereby certify that a copy of the above-referenced document was sent to the following this 7th day of March, 2006:

*[signature]*

JEWEL A. MARTINEZ
LEGAL ASSISTANT

James D Carney
International Sr. Vice President
UGSOA International Union
8620 Wolff Court, Suite 210
Westminster, CO 80031
*{Hard Copy - Regular Mail}*

Michael Hough, Local President
United Government Security Officers of America
Local 52
5519 Clairemont Mesa Blvd., #196
San Diego, CA 92117
*{Hard Copy - Regular Mail}*

Duke Wolley, Int'l Negotiator
UGSOA International Union
224 Clay Street
Carey, OH 43316
*{Hard Copy - Regular Mail}*

Jamie Harris, Contracting Officer
Department of Homland Security, FPS
W. 6th. Avenue and Kipling Street
Lakewood, CO 80225
*{Hard Copy - Regular Mail}*

Martin Healy, General Counsel
U.S. Protect, Incorporated
801 Roeder Road, Suite 1000
Silver Spring, MD 20910
*{Hard Copy - Regular Mail}*

Nila J Stoval Chief,
Branch of Svc Contract Wage Determinations
Wage and Hour Division
U.S. Department of Labor
Washington, DC 20210
*{Hard Copy - Regular Mail}*

William W Gross, Director
Office of Wage Determinations
Wage and Hour Division
U.S. Department of Labor
Washington, DC 20210
*{Hard Copy - Regular Mail}*

Alfred B Robinson
Deputy Administrator
Wage and Hour Division
U.S. Department of Labor
Washington, DC 20210
*{Hard Copy - Regular Mail}*

**SERVICE SHEET** continued (2006CBV00002 Case Decision)   Page: 2

Ford Newman, Esq.
Counsel for Trial Litigation, FLS
Office of the Solicitor
U.S. Department of Labor, N2716
Washington, DC 20210
  *{Hard Copy - Regular Mail}*

Susan Mathis
Office of the Principal Legal Advisor
Department of Homeland Security
425 I Street, N.W., Room 6100
Washington, DC 20536
  *{Hard Copy - Regular Mail}*

Counsel for Trial Litigation
Division of Fair Labor Standards
U. S. Department of Labor
Room N-2716, FPB
200 Constitution Ave., N.W.
Washington, DC 20210
  *{Hard Copy - Regular Mail}*