## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re: UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA, LOCAL NO. 52, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>MICHAEL CHERTOFF, Director, United States Department of Homeland Security, )<br><br>and )<br><br>GARY SCHENKEL,[1] Director, Federal Protective Service, United States Department of Homeland Security, )<br><br>Defendants. ) | Civil Action No. 07-0173 (CKK) |

## DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants, Michael

Chertoff, Secretary of the United States Department of Homeland Security ("DHS"), and Gary

Schenkel, Director of Federal Protective Service ("FPS"), through counsel, respectfully move

this Court to dismiss the amended complaint in its entirety. Dismissal is required because

plaintiffs cannot establish their entitlement to the extraordinary relief in the nature of mandamus

---

[1]Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Gary Schenkel has been automatically substituted in lieu of Paul R. Durette as the proper defendant in this case. See Fed. R. Civ. P. 25(d)(1). Mr. Schenkel was sworn in as the Director of the Federal Protective Service in March, 2007.

that they seek.  Nor can plaintiffs establish their entitlement to declaratory relief.

A memorandum of points and authorities and a proposed order accompany this motion.

Dated:  August 31, 2007

                              Respectfully submitted,


                                 /s/ Jeffrey A. Taylor
                              JEFFREY A. TAYLOR, D.C. BAR # 498610
                              United States Attorney


                                 /s/ Rudolph Contreras
                              RUDOLPH CONTRERAS, D.C. BAR #  434122
                              Assistant United States Attorney


                                 /s/ Michelle N. Johnson
                              MICHELLE N. JOHNSON, D.C. BAR # 491910
                              Assistant United States Attorney
                              United States Attorney's Office
                              Civil Division
                              555 4th Street, N.W. – Room E4212
                              Washington, D.C. 20530
                              (202) 514-7139

                              COUNSEL FOR DEFENDANTS


Of Counsel:

Jennifer Longmeyer-Wood
D.C. Bar # 470356
Associate Legal Advisor
Department of Homeland Security
Immigration and Customs Enforcement
425 I Street, NW
Suite 6100
Washington, DC 20536

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In Re: UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA, LOCAL NO. 52, <u>et al.</u>, | ) ) ) ) |
| Plaintiffs, | ) ) |
| | ) Civil Action No. 07-0173 (CKK) |
| v. | ) ) ) |
| MICHAEL CHERTOFF, Director, United States Department of Homeland Security, | ) ) ) ) ) |
| and | ) ) |
| GARY SCHENKEL,[1] Director, Federal Protective Service, United States Department of Homeland Security, | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants, Michael Chertoff,

Secretary of the United States Department of Homeland Security ("DHS"), and Gary Schenkel,

Director of Federal Protective Service ("FPS") (collectively referred to herein as "defendants"

---

[1] Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Gary Schenkel has been automatically substituted in lieu of Paul R. Durette as the proper defendant in this case. <u>See</u> Fed. R. Civ. P. 25(d)(1). Mr. Schenkel was sworn in as the Director of the Federal Protective Service in March, 2007.

1

or the "DHS defendants"), respectfully move to dismiss this action against them because the complaint fails to state claims upon which relief can be granted.

## BACKGROUND

The present action was initiated by both the international and local component of the United Government Security Officers of America ("UGSOA"). First Amended Complaint ("Am. Compl.") at 2. UGSOA Local 52 and the UGSOA International Union are the certified bargaining unit representatives for the employees of U.S. Protect. Am. Compl. ¶ 2. Since approximately September 2003, U.S. Protect employees have provided security services at various federal facilities in the San Diego, California vicinity for DHS pursuant to a contract DHS has with U.S. Protect. Id. ¶ 5.

On or about September 5, 2005, the UGSOA filed a petition for a hearing in accordance with the provisions of subsection 4(c) of the McNamara-O'Hara Service Contract Act of 1965, as amended, 41 U.S.C. § 351, et seq. ("the SCA" or "the Act"), regarding the wages paid to its members as provided for by the collective bargaining agreement ("CBA") between U.S. Protect and UGSOA. Id. ¶ 6. On or about December 14, 2005, the Deputy Administrator of the Employment Standards Administration issued an Order of Reference pursuant to the provisions of 29 C.F.R. section 4.10(c) of the SCA, thereby transmitting to the Office of Administrative Law Judges UGSOA Local 52's request for a hearing concerning the wages being paid to its employees. Exhibit A (Decision and Order dated March 7, 2006), at 1; Compl. ¶ 7. UGSOA contended that the wages and fringe benefits its employees were being paid were substantially less than the wages and fringe benefits being paid to other security workers providing comparable services in the San Diego vicinity. Ex. A, at 3. In a notice issued January 10, 2006,

all interested persons, including U.S. Protect and DHS, were informed that a pre-hearing

conference and a hearing would be held in San Diego on February 8, 2006.  Id. at 1-2; Am.

Compl. ¶ 8.  Only UGSOA entered an appearance at the pre-hearing conference.  Ex. A, at 2.[2]

At the hearing, UGSOA contended that the wages for members of Local 52 employed by U.S.

Protect should be increased from $18.50 per hour of straight time to $21.54 per hour and that

their fringe benefit payments should be increased from $2.56 per hour to $2.86 per hour.  Id. at

3.[3]

In his Decision and Order dated March 7, 2006, administrative law judge ("ALJ") Paul

A. Mapes found that "[b]ecause no other interested party elected to appear at the hearing to

oppose [UGSOA's] request, it [was] permissible to grant the request."  Id. (citing 29 C.F.R. §

6.7(b)).  In addition, the ALJ found that UGSOA's request had been supported by the testimony

of its three witnesses and that the prevailing wage UGSOA suggested was "consistent with the

results of Department of Labor surveys showing the wages prevailing for security workers in the

---

[2]DHS provided a letter to the administrative law judge indicating that it had received
notice of the hearing but elected not to appear because it does not "intervene in labor disputes
between agency contractors and their unions."  Ex. A, at 2 n.1.

[3]The section of the Act most relevant to the administrative proceeding in this case is
section 4(c), which governs predecessor contracts that contain collective bargaining agreements.
41 U.S.C. § 353(c).  That section states that no contractor or subcontractor "under a contract"
shall pay less than the wages and fringe benefits to which the employees "would have been
entitled if they were employed under the predecessor contract."  Id.  Section 4(c) further
provides that "[i]f the Secretary finds after a hearing . . . that such wages and fringe benefits are
substantially at variance with those which prevail for service of a character similar in the locality
. . ." the wage rates should be changed to reflect the prevailing rate.  Id.  DOL regulations
establish the procedures for section 4(c) substantial variance hearings before an Administrative
Law Judge, see 29 C.F.R. §§ 4.1(b); 4.10; 6.50-6.57, and provide that if no appeal is taken, the
Deputy Administrator "shall promptly issue any wage determination which may be required as a
result of the decision."  29 C.F.R. § 6.56.

vicinity of San Diego." Id. at 4.  The ALJ ordered the Administrator of the Department of

Labor's Wage and Hour Division to "promptly issue a new wage determination in accordance

with [his] Decision and Order." Id. at 5.  By letter dated August 16, 2006, the Administrator's

authorized representative, the Director of the Office of Wage Determinations, notified DHS, the

contracting agency, that the Wage and Hour Division had applied the rates ordered by the ALJ to

the contract and that the rates were to be paid retroactive to the date of the ALJ's Decision and

Order.  Exhibit B, Letter to Mr. Kevin C. Schreiber, Contract Specialist, Federal Protective

Service, Immigration and Customs Enforcement, DHS, dated August 16, 2006.[4]

On January 24, 2007, plaintiffs filed their complaint in this Court.  In addition to the

current defendants, the complaint named U.S. Protect, Elaine Chao, Secretary of the United

States Department of Labor ("DOL"), and Paul DeCamp, Administrator of the Wage and Hour

Division of DOL.[5]  Thereafter, on July 27, 2007, plaintiffs filed their First Amended Complaint

naming solely the DHS defendants.  In Count I of their amended complaint, plaintiffs seek "a

---

[4]The Wage and Hour division did not incorporate the ALJ's rates into the registers of
wage determinations listing the prevailing wage and fringe benefits for all occupations in the San
Diego area.  In accordance with 29 C.F.R. § 6.7(b), because no other party appeared at the pre-
hearing conference and hearing, the ALJ was permitted to "find the facts as alleged in the
complaint."  However, the wage rate requested by UGSOA and thus ordered by the ALJ was
greater than that listed in the DOL's existing prevailing wage determination for the locality.
Therefore, in lieu of issuing a revised wage determination in standard form, which would have
general applicability and raise the prevailing wage for the entire locality, the Director notified
the contracting agency of the new wage determination applicable to this specific procurement
contract via letter.

[5]On June 19, 2007, the Court granted U.S. Protect's motion to dismiss as conceded in
light of plaintiffs' failure to respond to the motion.  Docket No. 6.  The DOL defendants filed a
motion to dismiss, or in the alternative, for summary judgment.  Docket Nos. 9 & 10.  However,
prior to responding to that motion, plaintiffs filed their amended complaint naming only the DHS
defendants.  Docket No. 12.

writ of mandamus directing the DHS and its Director of Federal Protective Service and

Immigration and Customs Enforcement to comply with and implement the [ALJ] [d]ecision."

Compl. at 8-9.  Plaintiffs also seek relief, pursuant to Federal Rule of Civil Procedure 57, the

Service Contract Act, 41 U.S.C. §§ 351, et seq., ("SCA"),[6] and the Declaratory Judgment Act, 28

U.S.C. § 2201, in the form of a declaratory judgment regarding the scope of the ALJ's decision,

as well as a declaration that the DOL's letter dated August 16, 2006, "is final and binding upon

the DHS and the DHS is obligated to immediately comply with the same without modification."

Compl. ¶¶ 26-29; id. at 9.

## ARGUMENT

### A.    Legal Standard

Defendants move for dismissal pursuant to Rule 12(b)(6) because plaintiffs fail to state

claims upon which relief can be granted.  The standard for granting a motion to dismiss pursuant

to Rule 12(b)(6) is well-known.  To survive dismissal, a complaint's "[f]actual allegations must

be enough to raise a right to relief above the speculative level . . . ."  Bell Atlantic Corp. v.

Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted) (emphasis added).  Dismissal is

required if the complaint does not plead "enough facts to state a claim to relief that is plausible

on its face."  Id. at 1974.

---

[6]The Service Contract Act does not confer a private right of action, thus plaintiffs' reliance on this provision in support of the Court's jurisdiction is legally erroneous.  Danielsen v. Burnside-Ott Aviation Training Ctr., Inc., 941 F.2d 1220, 1229 (D.C. Cir. 1991) ("[W]e conclude . . . that the private civil action, even couched in RICO terms, will not lie for an alleged breach of the SCA.").  Cf. Gautier Rodriguez v. Mason Technologies, Inc., 931 F. Supp. 114, 118 (D.P.R. 1996) (dismissing case brought pursuant to the SCA for lack of subject matter jurisdiction); Nichols v. Mower's News Service, Inc., 492 F. Supp. 258, 261 (D. Vt. 1980) (same).

In deciding a motion to dismiss, the Court is at liberty to refer to documents of which the Court may take judicial notice without converting the motion into one for summary judgment. See Lipton v. MCI Worldcom, 135 F. Supp. 2d 182, 186 (D.D.C. 2001) (noting that court would take judicial notice of public documents in consideration of a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6)).  Additionally, the Court is permitted to consider the facts as alleged in the complaint, as well as documents attached to or incorporated into the complaint by reference. See Wagener v. SBC Pension Benefit Plan, 407 F.3d 395, 397 (D.C. Cir. 2005) (noting that in reviewing district court's grant of motion to dismiss, the court could refer to "exhibits attached to, and the documents incorporated by reference in, the complaint.").

**B.     Plaintiffs Are Not Entitled to Mandamus Relief.**

A writ of mandamus is provided only under "exceptional circumstances" essential to the administration of justice.  See Hanek v. Secretary of HEW,  535 F.2d 1291, 1296 (D.C. Cir. 1976) (emphasis added); In Re Tripati, 836 F.2d 1406, 1407 (D.C. Cir. 1988) (citing Starnes v. McGuire, 512 F.2d 918, 929 (D.C. Cir. 1974) (en banc)). While a federal district court has authority to issue a writ of mandamus pursuant to 28 U.S.C. § 1361, its issuance is not required; rather, mandamus is issued at the discretion of the Court.  National Wildlife Federation v. United States, 626 F.2d 917, 923 (D.C. Cir. 1980).

Mandamus generally will not issue unless there is a clear right in the claimant to the relief sought, a plainly defined and nondiscretionary duty on the part of the defendant to honor that right, and no other adequate remedy, either judicial or administrative, available.  Ganem v. Heckler, 746 F.2d 844, 852 (D.C. Cir. 1984); accord In Re Lane, 801 F.2d 1040, 1042 (8th Cir. 1986); Homewood Professional Care Center, Ltd. v. Heckler, 764 F.2d 1242, 1251 (7th Cir.

6

1985); <u>Jones v. Alexander</u>, 609 F.2d 778, 781 (5th Cir. 1980); <u>Billiteri v. U.S. Board of Parole</u>, 541 F.2d 938, 946 (2d Cir. 1976).  "It is well established that '[m]andamus is an extraordinary remedy to be utilized in only the clearest and most compelling cases."  <u>Danielsen v. Dole</u>, 746 F. Supp. 160, 166 (D.D.C. 1990) (quoting <u>Cartier v. Secretary of State</u>, 506 F.2d 191, 199 (D.C. Cir. 1974), <u>cert</u>. <u>denied</u>, 421 U.S. 947 (1975)), <u>aff'd in part, dismissed in part</u>, 946 F.2d 1564 (D.C. Cir. 1991).  <u>See also</u> <u>Ganem</u>, 746 F.2d at 852 (noting that mandamus is "an extraordinary remedy . . . [that] generally will not issue unless . . ." these requirements are met) (citing <u>Heckler v. Ringer</u>, 466 U.S. 602, 616 (1984) (other citations omitted).

Therefore, to meet the mandamus standard, Plaintiffs must establish that there is: (1) a clear right to the relief they seek; (2) a plainly defined and nondiscretionary duty on the part of the defendant; and (3) no other adequate remedy available.  <u>In re Medicare Reimbursement Litigation</u>, 414 F.3d 7, 10 (D.C. Cir. 2005).

**1.    Plaintiffs Do Not Have A Clear Right to the Relief They Seek.**

"A plaintiff bears a heavy burden of showing that his right to a writ of mandamus is 'clear and indisputable.'"  <u>West v. Spellings</u>, 480 F. Supp. 2d 213, 217 (D.D.C. 2007) (citation omitted).  Plaintiffs seek "mandamus to compel Defendants to enforce and execute the final decision . . . ."  Am. Compl. ¶ 24.  Plaintiffs essentially seek relief under the SCA.  Significantly, however, "[i]t is well established . . . that the SCA does not confer a private right of action, but rather provides for exclusive administrative enforcement with the Secretary of Labor."  <u>Danielsen</u>, 746 F. Supp. at 166 (citations omitted).  <u>See also</u> <u>District Lodge No. 166 v. TWA Services, Inc.</u>, 731 F.2d 711, 716 (11th Cir. 1984) ("We hold that plaintiff cannot maintain a private right of action under the SCA . . . .");  <u>Gautier Rodriguez</u>, 931 F. Supp. at 118 ("[T]he

7

SCA neither explicitly nor implicitly authorizes a private cause of action.").

Furthermore, as discussed further, <u>infra</u>, plaintiffs cite no provision of the SCA, or any other statute, that indicates that DHS has a duty to "enforce and execute the final decision . . . ." As noted by this Court, "[t]he purpose of the SCA was to ensure that service employees working on government contracts are not paid wages below the prevailing wages being paid in the locality by non-government contractors." <u>Danielsen</u>, 746 F. Supp. at 166. Specifically, 41 U.S.C. section 351(a)(1), cited by plaintiffs, requires:

> [E]very contract . . . entered into by the United States or the District of Columbia in excess of $2,500 . . . the principal purpose of which is to furnish services in the United States through the use of service employees, shall contain . . . (1) A provision specifying the minimum monetary wages to be paid the various classes of service employees in the performance of the contract or any subcontract thereunder, as determined by the Secretary, or his authorized representative, in accordance with prevailing rates for such employees in the locality . . . .

41 U.S.C. § 351(a)(1); <u>see also</u> Am. Compl. ¶ 16. This provision does not establish that the DHS defendants have a duty to "enforce" the wage determination as alleged by plaintiffs. Thus, because plaintiffs do not have a private right of action under the SCA, and because the SCA imposes no duty to perform the actions plaintiffs seek to compel, plaintiffs cannot establish a clear right to the relief they are seeking.

**2.     The DHS Defendants Do Not Have A Clear Duty to Act.**

Mandamus relief is only necessitated where there is a clear duty to act. <u>West</u>, 480 F. Supp. 2d at 417 ("In the absence of a clear and certain duty to act by the public official, there can be no mandamus relief."). The requirement of a clear duty to act has been interpreted to mean that the duty of the federal officer sued must be "ministerial, plainly defined and peremptory." <u>Jeno's Inc. v. Commissioner of Patents and Trademarks</u>, 498 F. Supp. 472, 476 (D. Minn.1980)

(citation omitted). "A ministerial duty is one that admits of no discretion, so that the official has

no authority to determine whether to perform the duty." West, 480 F. Supp. 2d at 417 (citation

omitted). As the Supreme Court has stated, "the extraordinary remedy of mandamus under 28

U.S.C. § 1361 will issue only to compel the performance of 'a clear nondiscretionary duty.'"

Pittson Coal Group v. Sebben, 488 U.S. 105, 121 (1988) (quoting Heckler v. Ringer, 466 U.S.

602, 616 (1984)).

   Despite the allegation in their complaint that "Defendants Chertoff and [Schenkel] have a

clear, nondiscretionary duty to comply with the Decision as per the directive of the DOL on

August 16, 2006[,]" Am. Compl. ¶ 23, plaintiffs have cited no statutory provisions contained in

the SCA to support this blanket assertion. Indeed, no such duty exists. See, e.g., Danielsen, 746

F. Supp. at 167-68 ("[D]espite plaintiffs' assertions to the contrary, neither the Secretary of

Labor nor the Secretary of the Navy have a clearly defined or specific duty under the SCA to

enforce retroactive wage determinations or to institute enforcement proceedings in every case.").

   Furthermore, even assuming the August 16th letter could be construed as imposing any

obligations on the DHS defendants, this letter does not order DHS to "enforce" the ALJ's

decision. Rather, the plain terms of the letter indicate that it was sent merely to provide notice of

the changes in the wage determination:

> This letter serves to notify you of the application of these rates to the
> referenced contract. These rates are to be paid effective March 7, 2006,
> the date of the ALJ *Decision and Order.*

Ex. B, at 2 (emphasis added). While indicating the date that such wages would be paid, clearly

there is nothing in this letter requiring DHS to enforce payment of these wages. Rather, under

the SCA, the employer, U.S. Protect, has sole responsibility for paying its employees. 41 U.S.C.

9

section 351(b)(1) provides:

> No contractor who enters into any contract with the Federal Government
> the principal purpose of which is to furnish services through the use of
> service employees and no subcontractor thereunder shall pay any of his
> employees engaged in performing work on such contracts less than the
> minimum wage specified under section 206(a)(1) of Title 29.

(Emphasis added).  Thus, it is U.S. Protect that has the duty to pay its employees the wages as

established by the prevailing wage rate.

While the SCA contains no mandatory language requiring DHS to act, "even in an area

generally left to agency discretion, there may well exist statutory or regulatory standards

delimiting the scope or manner in which such discretion can be exercised.  In these situations,

mandamus will lie when the standards have been ignored or violated."  Barron v. Reich, 13 F.3d

1370, 1376 (9th Cir. 1994) (citation omitted).  Of particular significance here, the explicit terms

of the SCA vest the Secretary of Labor with discretion regarding the handling of any under

payments to contracted employees:

> Any violation of any of the contract stipulations required by
> section 351(a)(1) or (2) or of section 351(b) of this title shall render
> the party responsible therefor liable for a sum equal to the amount
> of any deductions, rebates, refunds, or underpayment of compensation
> due to any employee engaged in the performance of such contract.
> So much of the accrued payment due on the contract or any other
> contract between the same contractor and the Federal Government
> may be withheld as is necessary to pay such employees.  Such withheld
> sums shall be held in a deposit fund.  On order of the Secretary,
> any compensation which the head of the Federal agency or the
> Secretary has found to be due pursuant to this chapter shall be paid
> directly to the underpaid employees from any accrued payments
> withheld under this chapter.

41 U.S.C. § 352(a) (emphasis added).  Section 352 further only provides that "the Federal

agency head or the Secretary is hereby authorized to carry out the provisions of this section."  41

U.S.C. § 352(b) (emphasis added).[7]  As the <u>Barron</u>, court concluded, "[t]he language used in the enforcement provisions of the SCA is thus a far cry from the mandatory language relied upon by courts which <u>have</u> found that issuance of a writ may be warranted."  13 F.3d at 1375 (citations omitted).  Because plaintiffs cannot point to any nondiscretionary duty by the defendants to act, and cannot show that the defendants have, "in the exercise of their discretion, strayed outside the bounds of the SCA[,]" their request for a writ of mandamus should be denied.  <u>Id.</u> at 1376 (holding that any duty the Secretary of Labor had to investigate an alleged underpayment beyond the two-year limit employed by the Administrator was discretionary, not ministerial and thus mandamus was not appropriate because it can only be afforded "when an official has failed to perform a duty which is clearly ministerial.").  In short, the relief plaintiffs seek is not mandated by the SCA.

### 3.    Plaintiffs Have an Alternative Remedy.

It is abundantly clear that what plaintiffs really seek in this case is payment of the higher wages as ordered by the ALJ's March 7, 2006 decision.  This is relief that plaintiffs should seek from their employer, U.S. Protect.  Pursuant to the SCA, U.S. Protect has a duty to pay plaintiffs the wages as determined by the ALJ, not DHS.  41 U.S.C. § 351(b)(1).  DHS has no contractual relationship with the plaintiffs.  Rather, once the final administrative decision was issued, the new wage determination became a part of the contract, and the employer was required to pay the

---

[7]While 41 U.S.C. section 354(b) authorizes a limited cause of action to recover under payments, it contains no mandate to do so.  <u>See</u> 41 U.S.C. § 354(b) ("If the accrued payments withheld under the terms of the contract are insufficient to reimburse all service employees with respect to whom there has been a failure to pay the compensation required . . . the United States <u>may</u> bring action against the contractor, subcontractor, or any sureties in any court of competent jurisdiction to recover the remaining amount of underpayments.") (emphasis added).

higher wage, as set forth in the Federal Acquisition Regulation ("FAR"), 28 C.F.R. § 52.222-41.

Pursuant to the FAR, once wages are found to be

> substantially at variance with those which prevail for services
> of a character similar in the locality . . . the Department [of Labor]
> will issue a new or revised wage determination setting forth the
> applicable wage rates and fringe benefits.  Such a determination shall be
> made part of the contract . . . in accordance with the decision of the
>  . . . the Administrative Law Judge . . . irrespective of whether such
> issuance occurs prior to or after the award of a contract . . . In the case
> of a wage determination issued solely as a result of a finding of
> substantial variance, such determination shall be effective as of the date
>  of the final administrative decision.

48 C.F.R. § 52.222-41(f) (emphasis added).  Thus, the wage determination was effectively made

a part of the contract as of the date of the final administrative decision.  The SCA provides a

method by which the employer can recoup the difference in wages paid initially under the

contract and the higher wages found to be owed pursuant to the substantial variance wage

determination.  See 48 C.F.R. § 52.222-43 ("The contract price or contract unit price labor rates

will be adjusted to reflect the Contractor's actual increase . . . in applicable wages . . . to the

extent that the increase is made to comply with . . . [a]n increased . . . wage determination

otherwise applied to the contract by operation of law[.]"); id. § 52.222-43(f) ("The Contractor

shall notify the Contracting Officer of any increase claimed under this clause within 30 days

after receiving a new wage determination . . . .").  The employer, however, retains the primary

responsibility for ensuring that its employees are paid in accordance with the applicable wage

determination.  48 C.F.R. § 22.1022 ("Any violations of the clause at 52.222-41, Service

Contract Act of 1965 . . . renders the responsible contractor liable for the amount of any . . .

underpayments . . . of compensation due employees performing the contract.").[8]

Most significantly, the SCA provides a mechanism by which plaintiffs themselves may present their grievance to the DOL.  The Act specifically provides that interested parties, such as the plaintiffs, may report violations of the Act to the DOL.  29 C.F.R. § 4.191 ("Any employer, employee, labor or trade organization, contracting agency, or other interested person or organization may report to any office of the Wage and Hour Division . . . a violation or apparent violation of the Act, or of any of the rules or regulations prescribed thereunder. . . . Information furnished is treated confidentially") (emphasis added).  The availability of this administrative channel precludes plaintiffs' request for mandamus.  See Nichols, 492 F. Supp. at 261 (holding that employee's wage grievances had to "be brought in accordance with the procedures provided in the SCA . . . ." and noting that the "SCA authorizes the Secretary [of Labor] to enforce the act through administrative proceedings.  It does not provide a private right of action.  Instead, individuals with grievances may bring them to the Secretary's attention by using the procedures outlined in 29 C.F.R. § 4.191.").

In light of the SCA's administrative scheme, plaintiffs clearly have an alternative route by which to air their grievances.  They may not present their claims, which essentially seek relief under the SCA, to this Court camouflaged as claims for mandamus.  As noted previously, "[i]t is well-established . . . that the SCA does not confer a private right of action, but rather provides for exclusive administrative enforcement with the Secretary of Labor."  Danielsen, 746 F. Supp. at

---

[8]Notably, 48 C.F.R. § 22.1022 provides that the contracting officer "may withhold . . . the amount needed to pay such underpaid employees from accrued payments due the contractor on the contract . . . ."  However, this duty is not mandatory unless the contracting officer is requested to do so by virtue of a "written request of the Department of Labor . . . ."  Id.  Clearly, the August 16th letter made no such request.

166 (citations omitted, emphasis added).  Thus, by instituting this action seeking mandamus

relief, plaintiffs in fact seek what in fact they could not obtain pursuant to the SCA directly.  See

C&E Services, Inc. v. District of Columbia Water & Sewer Auth., 310 F.3d 197, 201 (D.C. Cir.

2002) ("[D]isputes arising under the SCA must be resolved, in the first instance, by 'the statutory

scheme for administrative relief set forth by Congress in the SCA' and administered by the

Department of Labor.") (quoting Danielsen v. Burnside-Ott Aviation Training Ctr., Inc., 941

F.2d 1220, 1226 (D.C. Cir. 1991)).  Plaintiffs' recourse in this case is to sue their employer for

any alleged underpayment, not sue DHS, a party with which they have no contractual

relationship.  Alternatively, plaintiffs can bring their grievance to the Secretary of Labor's

attention, pursuant to 29 C.F.R. § 4.191.  Because plaintiffs have alternative means of seeking

the relief they want, they are not entitled to the extraordinary remedy of mandamus.  See also

Ganem, 746 F.2d at 852 ("[A] writ of mandamus will issue only when the plaintiff has attempted

to exhaust all administrative remedies . . . .");  In re Lane, 801 F.2d at 1042 (denying writ of

mandamus where petitioner was "unable to demonstrate either that no other adequate legal

remedy exists or that he has a right . . ." to the relief he sought.).

**C.     Plaintiffs Cannot Seek Relief Under the Declaratory Judgment Act.**

      **1.     The Court Lacks Jurisdiction to Adjudicate Plaintiffs' Request for Declaratory Relief.**

      Having established that plaintiffs are not entitled to the mandamus relief they seek,

dismissal of their request for declaratory judgment (Count II) is required.  Plaintiffs have sought

relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and cite those

provisions, in conjunction with Federal Rule of Civil Procedure 57, as the basis for this Court's

jurisdiction.  Am. Compl. ¶ 1.  However, these statutory provisions do not independently confer

14

jurisdiction on this Court.  See C&E Services, Inc., 310 F.3d at 201 (noting the "well-established

rule [that] the Declaratory Judgment Act 'is not an independent source of federal jurisdiction.'")

(quoting Schilling v. Rogers, 363 U.S. 666, 677 (1960) (other citation omitted)).  See also Senate

Select Comm. on Presidential Campaign Activities v. Nixon, 366 F. Supp. 51 & n.7 (D.D.C.

1973) ("[I]t should be noted that the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202,

and Rule 57 of the Federal Rules of Civil Procedure do not themselves confer jurisdiction.

These statutes, as defendant points out, are procedural only and do not constitute the

jurisdictional statute necessary to consideration of a specific declaratory judgment action." )

(citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950); Aetna Life Ins. Co. v.

Haworth, 300 U.S. 227, 249 (1937)).  As fully explained by the Court in Gem County Mosquito

Abatement Dist. v. E.P.A., 398 F. Supp. 2d 1, 12 (D.D.C. 2005), appeal dismissed, No. Civ.A.

05-5043, 2005 WL 3789086 (D.C. Cir. Sept. 8, 2005):

> [I]t is well-settled that the Declaratory Judgment Act does not
> independently create jurisdiction. . . . When a plaintiff has a legal claim
> under federal law, the Declaratory Judgment Act allows him to obtain a
> a federal court declaration of his rights under that federal statute. . . . But,
> absent that independent legal right, the Declaratory Judgment Act does not
> confer jurisdiction.

Id. (emphasis added).

Here, in light of plaintiffs' failure to establish a right to relief under the mandamus

statute, this Court is without jurisdiction to award plaintiffs a declaratory judgment.[9]  See, e.g.,

---

[9]The lack of jurisdiction under the SCA has been discussed, supra, at 4 & n.5.  The final
statutory provision cited by plaintiffs for the basis of jurisdiction, 28 U.S.C. § 1331 ("Federal
Question"), also does not provide an independent basis of jurisdiction.  See Empire Healthchoice
Assurance, Inc. v. McVeigh, 126 S. Ct. 2121, 2131 (2006) ("A case 'arise[s] under' federal law
within the meaning of § 1331 . . . if 'a well-pleaded complaint establishes either that federal law
creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution

C&E Services, Inc., 310 F.3d at 201 (holding that district court "lacked authority to adjudicate [a party's] rights under the SCA except pursuant to the Administrative Procedure Act following a Department of Labor determination.").  See also Mylan Pharm., Inc. v. Thompson, 268 F.3d 1323, 1330 (D.C. Cir. 2001) ("The Declaratory Judgment Act, 28 U.S.C. § 2201, is remedial only.  It 'enlarged the range of remedies available in the federal courts but did not extend their jurisdiction.'") (quoting Skelly Oil, 339 U.S. at 671).

   **2.**  **Plaintiffs' Claim for Declaratory Relief Circumvents the SCA.**

   Plaintiffs seek a declaratory judgment that (1) "on or about March 7, 2006, Plaintiffs received a lawful, final Decision . . . from ALJ Mapes finding a substantial wage variance for the Security Guards represented by the UGSOA . . . in Imperial, Riverside, San Bernardino and San Diego Counties, California . . . ." and (2) "that the DOL's interpretation of the Decision on August 16, 2006 is final and binding upon the DHS and the DHS is obligated to immediately comply with the same without modification."  Am. Compl. at 8-9.  Plaintiffs' claim for a declaratory judgment regarding the scope of the ALJ's Order, as well as DOL's interpretation of that order, is really an attempt to seek relief pursuant to the SCA, a statute that does not confer a private right of action to plaintiffs.  Danielsen, 746 F. Supp. at 166.  In asserting a claim under the Declaratory Judgment Act, "[a] party's legal interest . . . must relate to an actual 'claim arising under federal law which another asserts against him . . . .'"  Mylan Pharm., Inc., 268 F.3d

---

of a substantial question of federal law.'") (citation omitted); Arbaugh v. Y&H Corp., 546 U.S. 500, 513 (2006) ("A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim 'arising under' the Constitution or laws of the United States.") (citation omitted).  See also Gem County Mosquito Abatement Dist., 398 F. Supp. 2d at 12 ("Section 1331 does not independently or separately confer jurisdiction.  Rather, the [p]laintiffs must identify a statute or law of the United States on which their claims are based.").

at 1330 (citation omitted).  When analyzing a purported declaratory judgment claim, the court

does "not look to the plaintiff's complaint to determine which federal law is the basis of the

declaratory plaintiff's cause of action, 'but to the action that the declaratory defendant would

have brought' to enforce its rights.'"  Id. (citations omitted).  See also  Collin County Tex. v.

Homeowners Ass'n for Values Essential to Neighborhoods (HAVEN), 915 F.2d 167, 171 (5th

Cir. 1990) ("Since it is the underlying cause of action of the defendant against the plaintiff that is

actually litigated in a declaratory judgment action, a party bringing a declaratory judgment

action must have been a proper party had the defendant brought suit on the underlying cause of

action.").

        Here, plaintiffs' claims for declaratory judgment ask the Court to determine rights that

should be determined vis-a-vis the employer, U.S. Protect, and DHS, as the contracting agency

pursuant to the SCA's administrative paradigm.  By filing an action for declaratory judgment,

plaintiffs have sought relief that they could not obtain by virtue of the SCA and dismissal is

required.  A similar conclusion was reached by the court in Mylan Pharm., Inc., where a party

brought an action ostensibly seeking a declaratory judgment.  268 F.3d at 1332.  The court

concluded that the suit was "in essence an attempt to assert a private right of action for

'delisting' under the [Federal Food, Drug, and Cosmetic Act (FFDCA)]."  Id.  Because the

FFDCA did not provide a private cause of action, however, the court held that there could be no

viable claim for a declaratory judgment.  Id. at 1333.  As in Mylan Pharm., Inc., in this case,

plaintiffs seek relief pursuant to a statute that does not confer a private right of action.

Accordingly, they have failed to assert a cognizable claim for relief under the Declaratory

Judgment Act.  See also Gautier Rodriguez, 931 F. Supp. at 118 ("Additionally, this court agrees

17

with the district courts that the Secretary of Labor, and not private parties, has exclusive

jurisdiction to enforce the SCA; therefore, this court has no subject matter jurisdiction to hear

plaintiffs' complaint under the SCA and furnish them with some type of relief.").

### 3.    There is No Actual Case or Controversy.

Plaintiffs have failed to demonstrate that there is an actual case or controversy that

warrants declaratory relief.  "Under the Declaratory Judgment Act . . . a federal court may

exercise jurisdiction over a declaratory judgment only when there is an actual controversy

between the parties." Citizens Elec. Co. v. Osram GMBH, 377 F. Supp. 2d 149, 152 (D.D.C.

2005) (citation omitted).  To satisfy the "case or controversy" requirement of Article III of the

Constitution, "there must be 'a real and substantial controversy admitting of specific relief

through a decree of a conclusive character, as distinguished from an opinion advising what the

law would be upon a hypothetical state of facts.'"  Federal Express Corp. v. Air Line Pilots

Ass'n, 67 F.3d 961, 963-64 (D.C. Cir. 1995) (quoting Aetna Life Ins. Co., 300 U.S. at 241).

Therefore, the relevant inquiry "is whether the facts alleged, under all the circumstances, show

there is a substantial controversy, between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory judgment." Id. at 964 (quoting

Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).

There is no substantial controversy in this case.  First, as explained, supra, the DHS

defendants have no duty to "implement" or "enforce" the ALJ's Order or the subsequent wage

determination.  Second, if any dispute arises, that dispute will be between the employees and

their employer for any alleged underpayment, and possibly, between the employer and the

federal government, if the employer seeks, and is denied, recoupment of the higher wages.

However, until these events actually occur, there is no substantial controversy of "sufficient

immediacy and reality to warrant the issuance of a declaratory judgment."  Federal Express

Corp., 67 F.3d at 964; see id. at 965 (holding that declaratory judgment was not available where

there were "ongoing negotiations" and a threat by a party to "take all appropriate action" did

"not create a case or controversy.").  Here, interpretation of the ALJ Order will only become an

issue if and when U.S. Protect fails to pay all employees in all four counties higher wages; or

alternatively, a dispute may exist between U.S. Protect and DHS if U.S. Protect makes such

payments and is not reimbursed by DHS.  The possibility that these events may occur, however,

does not provide the case or controversy needed in this case for there to be a declaratory

judgment.

### 4.    The August 16th Letter Does Not Constitute Final Agency Action.

Plaintiffs also seek a declaration by this Court "that the DOL's interpretation of the [ALJ]

Decision on August 16, 2006 is final and binding upon DHS . . . ."  Am. Compl. at 8.  Assuming

declaratory relief was available in this instance, the declaration plaintiffs seek is not supported

by the facts in this matter for several reasons.

First, it is not apparent how this letter can be "binding" on DHS as it did not require DHS

to take any specific action.  See Ex. B.   Rather, the "letter serve[d] to notify . . ." DHS "of the

application of [the new] rates to the referenced contract."  Id. at 2.  It does not impose any

obligations or duties on DHS.[10]

_____

[10]The August 16th letter lacks other indicia of being final agency action.  First, it was
directed to another federal agency, versus a private party seeking to determine its rights.  Second,
it does not explicitly state that it is interpreting the ALJ's Order; rather, it recites the contract

Second, this letter does not constitute "final agency action."  "An agency action is deemed final if it 'mark[s] the consummation of the agency's decisionmaking process' and determines 'rights or obligations.'"  AT & T Co. v. E.E.O.C., 270 F.3d 973, 975 (D.C. Cir. 2001) (citation and internal quotation marks omitted).  Specifically, the action must demonstrate that the "agency . . . [has] made up its mind, and its decision must have '[i]nflicted an actual, concrete injury' upon the party seeking judicial review."  Id. (citation omitted).  "Courts have defined a nonfinal agency order as one, for instance, that does not itself adversely affect [the] complainant but only affects his rights adversely on the contingency of future administrative action."  Id. (quoting DRG Funding Corp. v. HUD, 76 F.3d 1212, 1214 (D.C. Cir. 1996) (other citation and internal quotation marks omitted).  Here, the August 16th letter did not adversely affect plaintiffs; nor did it impose any obligations upon DHS.  Rather, the purpose of the letter was to "notify" DHS of the application of the new rates to the referenced contract.  Ex. B, at 2.

Third, and most importantly, it is clear that the administrative process concerning application of the wage determination has not concluded.  It remains to be seen how the employer will pay its employees the increased wages and whether it will seek recourse against DHS, as the contracting agency, pursuant to the administrative remedies available to it under the SCA.  Finding there has been "final agency action" in these circumstances may disrupt that process.  See, e.g., AT&T, 270 F.3d at 976 ("For the court to find here final agency action subject to judicial review, therefore, would disrupt the administrative process in a manner clearly at odds with the contemplation of the Congress.").  See also Gautier Rodriguez, 931 F. Supp. at

_____

number and lists the "various locations" where the security guards covered by the contract were employed.  It does not contain any language indicating that DOL interpreted the ALJ's order to cover all of these locations.

20

118 ("[T]he Secretary of Labor, and not private parties, has exclusive jurisdiction to enforce the

SCA[.]").

## **CONCLUSION**

For the reasons set forth above, defendants ask that this action be dismissed.


Dated:  August 31, 2007

                                        Respectfully submitted,

                                         ___/s/ Jeffrey A. Taylor_____
                                        JEFFREY A. TAYLOR, D.C. BAR # 498610
                                        United States Attorney

                                         ___/s/ Rudolph Contreras_____
                                        RUDOLPH CONTRERAS, D.C. BAR #  434122
                                        Assistant United States Attorney

                                         ___/s/ Michelle N. Johnson_____
                                        MICHELLE N. JOHNSON, D.C. BAR # 491910
                                        Assistant United States Attorney
                                        United States Attorney's Office
                                        Civil Division
                                        555 4th Street, N.W. – Room E4212
                                        Washington, D.C. 20530
                                        (202) 514-7139

                                        COUNSEL FOR DEFENDANTS


Of Counsel:

Jennifer Longmeyer-Wood
D.C. Bar # 470356
Associate Legal Advisor
Department of Homeland Security
Immigration and Customs Enforcement

425 I Street, NW
Suite 6100
Washington, DC 20536

# EXHIBIT A

**U.S. Department of Labor**     Office of Administrative Law Judges
50 Fremont Street - Suite 2100
San Francisco, CA 94105

(415) 744-6577
(415) 744-6569 (FAX)



**Issue Date: 07 March 2006**

Case Number:  2006-CBV-00002

In the Matter of:

**THE APPLICABILITY OF WAGE RATES COLLECTIVELY BARGAINED
BY U. S. PROTECT, INC., AND THE UNITED GOVERNMENT SECURITY
OFFICERS OF AMERICA (UGSOA) LOCAL NO. 52 UNDER A CONTRACT
FOR SECURITY OFFICERS IN SAN DIEGO, CALIFORNIA**

Appearances

James D. Carney
Senior Vice President
United Government Security Officers of America
8620 Wolff Court, Suite 210
Westminister, Colorado   80031
        For Local 52 of the United Government Security Officers of America

Before:  Paul A. Mapes
        Administrative Law Judge

## <u>DECISION AND ORDER</u>

The above-captioned matter arises from a petition by Local 52 of the United Government
Security Officers of America (UGSOA) for a hearing under the provisions of  subsection 4(c) of
the McNamara-O'Hara Service Contract Act, 41 U.S.C. §353 (c), concerning wages paid to its
members pursuant to a collective bargaining agreement between Local 52 and US Protect
Corporation.  The members of Local 52 and US Protect have been providing security services for
federal facilities in the vicinity of San Diego, California, since at least September of 2003.
Although the procurement contract between the United States and US Protect was originally
issued by the General Services Administration, responsibility for administering the contract was
subsequently transferred to the Department of Homeland Security (DHS).

On December 14, 2005, the Deputy Administrator of the Employment Standards
Administration issued an Order of Reference pursuant to the provisions of 29 C.F.R. §4.10(c)
and thereby transmitted the UGSOA's request to the Office of Administrative Law Judges for a
hearing.  Accordingly, in a notice issued on January 10, 2006 all interested persons, including
US Protect and the Department of Homeland Security (DHS), were informed that a pre-hearing

conference and a hearing would be held in San Diego on February 8, 2006. However, when the pre-hearing conference convened, the only entity entering an appearance was the petitioner, UGSOA.[1] After the hearing convened, UGSOA presented the testimony of three witnesses and submitted 25 exhibits, which have been admitted into evidence as Exhibits (EX) 1-25. On February 15, 2006, UGSOA also submitted a post-hearing brief. An expedited transcript of the hearing was received by the Office of Administrative Law Judges on February 27, 2006.

## BACKGROUND

In general, the Service Contract Act ("SCA") requires that every federal government contract in excess of $2,500 for a principal purpose of procuring services must contain a provision specifying the minimum hourly and fringe benefit amounts that are to be paid to the various categories of service employees working on such a contract. *See* 41 U.S.C. §§351(a)(1), (a)(2). These minimum wages and fringe benefits are predetermined by the Wage and Hour Division of the Employment Standards Administration, which has been designated by the Secretary of Labor to administer the SCA.

Under the SCA, two types of wage schedules (which are also known as "wage determinations") are prepared for inclusion in service contracts. The first type is a general wage determination, and the wages and fringe benefits contained in such a schedule are based on the rates which Wage and Hour Division surveys have found to be prevailing for the various classifications of service employees to be employed on the contract in the locality where the contract is to be performed. 41 U.S.C. §351(a)(1) and (2). These wage determinations are sometimes called "prevailing in the locality" wage determinations. The second type of wage determination is issued at locations where there is a collective bargaining agreement between the service employees and an employer that has been awarded a procurement contract subject to the SCA. In these circumstances, the Wage and Hour Division is required by the SCA to specify the wage and fringe benefit rates from the collective bargaining agreement (including prospective increases) as the required minimum amounts payable to the service employees working under the terms of the procurement contract. *Id.*

In addition to the foregoing requirements, subsection 4(c) of the SCA contains a special provision that applies when (1) there has been a prior contract involving substantially the same services and (2) the wages for the employees working on the earlier contract were set pursuant to a collective bargaining agreement. In particular, subsection 4(c) specifies that:

> No contractor or subcontractor under a contract, which succeeds a contract subject to this chapter and under which substantially the same services are furnished, shall pay any service employee under such contract less than the wages and fringe benefits, including accrued wages and fringe benefits, and any prospective

---

[1] The failure of the DHS to appear was explained in a January 30, 2006 letter to the undersigned Administrative Law Judge from Aaron T. Marshall, an Associate Legal Advisor in the U.S. Immigration and Customs Enforcement component of the DHS. According to the letter, DHS had received notice of the hearing but elected not to appear because it does not "intervene in labor disputes between agency contractors and their unions." Although US Protect did not provide a written explanation for its failure to appear, its General Counsel did confirm in a telephone conversation with the undersigned's law clerk that US Protect had received the hearing notice and had elected not to participate in the hearing.

increases in wages and fringe benefits provided for in a collective-bargaining agreement as a result of arm's length negotiations, to which such service employees would have been entitled if they were employed under the predecessor contract: *Provided, That in any of the foregoing circumstances such obligations shall not apply if the Secretary finds after a hearing in accordance with regulations adopted by the Secretary that such wages and fringe benefits are substantially at variance with those which prevail for services of a character similar in the locality.*

41 U.S.C. §353(c) (emphasis added).

## ANALYSIS

In this case, the UGSOA argues that the wages and fringe benefits currently being paid to members of Local 52 under the terms of its contract with US Protect are substantially less than the wages and fringe benefits prevailing for other security workers providing comparable services in the vicinity of San Diego.[2]  Thus, the UGSOA contends, the italicized passage from subsection 4(c) entitles the members of Local 52 to have their wages increased to a level equal to the wages prevailing for the other San Diego-area security guards performing comparable work.[3] In particular, the union contends that the wages for the members of Local 52 employed by US Protect should be increased from $18.50 per hour of straight time to $21.54 per straight-time hour and that their fringe benefit payments should be increased from $2.56 per hour to $2.86 per hour.  Tr. at 20-22, 36-37, EX 10 to EX 14.  Because no other interested party elected to appear at the hearing to oppose this request, it is permissible to grant the request.  *See* 29 C.F.R. §6.7 (b) (specifying that if a party fails to appear at a hearing governed by the provisions of 29 C.F.R. Part 6, the presiding Administrative Law Judge may "find the facts as alleged in the complaint").  Moreover, the UGSOA's request is well supported by the testimony of three witnesses who described the similarities between the work performed by members of Local 52 and the work performed by other workers who are classified as Security Guard II and Court Security Officers. Tr. at 45-56 (testimony of John Reed), Tr. at 60-71  (testimony of Todd Stillman), Tr. at 72-152

---

[2]  In this regard, it is noted that the testimony and exhibits indicate that there was at least one predecessor procurement contract involving substantially the same services and that the wages paid under that predecessor contract were less than the wages being paid under the current contract.  *See* EX 6 (collective bargaining agreement) and EX 22 (predecessor contract).

[3]  It is recognized that the United States Court of Appeals for the Fourth Circuit has determined that subsection 4(c) does not authorize the Secretary of Labor to set aside the wage and benefit provisions of a collective bargaining agreement if, as in this case, the wages and benefits in the agreement are less than the prevailing rates in the same locality for similar work.  *See Gracy v. International Brotherhood of Electrical Workers, Local Union No. 1340,* 868 F.2d 671 (4th Cir. 1989).  It is further recognized that the Administrator of the Wage and Hour Division subsequently adopted the *Gracy* decision's interpretation of subsection 4(c).  However, in 2003 the Administrator's interpretation was rejected by the Administrative Review Board.  *See In re: Substantial Wage Variance Between Local Collective Bargaining Agreement Wage and Local Prevailing Wage Determination No. 94-2419 (Rev. 18),* ARB No. 02-012 (ARB Sept. 29, 2003).  Hence, the ARB follows the *Gracy* holding only in cases arising in the Fourth Circuit and Department of Labor Administrative Law Judges must apply the ARB's interpretation of subsection 4(c) in cases arising in all the other federal circuits.  *Id.* at 8, n. 5.  Because the contract in this proceeding concerns services performed in the State of California, this case arises in the Ninth Circuit.

(testimony of Mike Hough). In addition, the prevailing wage suggested by the UGSOA is consistent with the results of Department of Labor surveys showing the wages prevailing for security workers in the vicinity of San Diego. Tr. at 36-37, EX 10 to EX 14. It is further noted that the differential between the current hourly wage and the prevailing hourly wage (16.4 percent or approximately $6,000 per year) is substantial. Accordingly, it is concluded that UGSOA has made the necessary "clear showing" that the compensation being paid to members of Local 52 for providing services covered by the current procurement contract with US Protect for the San Diego vicinity must be immediately increased to $21.54 per straight-time hour and that fringe benefits payments for these workers must be simultaneously increased to $2.86 per hour.

In addition to seeking an immediate adjustment in the wages and fringe benefits being paid to the members of Local 52, UGSOA is also asking that its proposed wage increases be made retroactive to October 1, 2005. As grounds for this request, UGSOA points out that it filed its petition in this case on September 1, 2005, but, despite regulations contemplating that the Administrator will act on such petitions within 30 days, no referral to the Office of Administrative Law Judges was made until December 14, 2005, thereby delaying the hearing in this matter until February of 2006. *See* 29 C.F.R §4.10 (b)(2). Moreover, the UGSOA argues, its efforts to initiate this proceeding were hampered by a refusal by DHS to provide the union with information concerning the details of its current procurement contract with US Protect. *See* EX 2, EX 3, 29 C.F.R. §4.1b (b)(3).

The UGSOA certainly has good reason to be disappointed by the lack of responsiveness to its legitimate requests by the Department of Homeland Security and the Employment Standards Administration. However, the regulations governing proceedings under subsection 4(c) of the SCA unequivocally indicate that when, as in this case, a procurement contract has already gone into effect, it is clearly impermissible for a new wage determination to be put into effect prior to the date of an Administrative Law Judge's decision concerning that wage determination. In particular, 29 C.F.R. §4.1b (a) provides in relevant part:

> If the contract has been awarded and work begun prior to a finding that the wages and/or fringe benefits in a collective bargaining agreement are substantially at variance with those prevailing in the locality, the payment obligation of such contractor or subcontractor with respect to the wages and fringe benefits contained in the new wage determination shall be applicable as of the date of the Administrative Law Judge's decision or, where the decision is reviewed by the Administrative Review Board, the date of the decision of the Administrative Review Board. (See also Sec. 4.163 (c).).

Accordingly, the UGSOA's request that the new wage determination go into effect prior to the date of this Decision and Order must be denied.

- 4 -

**ORDER**

Pursuant to the provisions of 29 C.F.R. §4.163(c), the Administrator of the Department of Labor's Wage and Hour Division is hereby directed to promptly issue a new wage determination in accordance with this Decision and Order.

A

Paul A. Mapes
Administrative Law Judges

**NOTICE OF RIGHT TO APPEAL**  Within 10 days after the date of this Decision and Order, any interested party who participated in the hearing that desires review of the decision must file a petition for review with the Administrative Review Board pursuant to 29 C.F.R. Part 8. The petition shall refer to the specific findings of fact, conclusions of law, or order excepted to and the specific pages of transcript relevant to the petition for review. 29 C.F.R. § 6.57. The Administrative Review Board may be served at: Administrative Review Board, U.S. Department of Labor, Room S-4309, 200 Constitution Ave., N.W., Washington, D.C. 20210. Pursuant to the provisions of 29 C.F.R. §6.7(b), petitions for review of default judgments by a party that did not appear at the hearing are permitted to allege procedural irregularities in the proceeding but are

# EXHIBIT B

**U.S. Department of Labor**     Employment Standards Administration
                                 Wage and Hour Division
                                 Washington, D.C. 20210                

AUG 1 6 2006

Mr. Kevin C. Schreiber
Contract Specialist
Federal Protective Service
Immigration and Customs Enforcement
Department of Homeland Security
P.O. Box 25266
Denver Federal Center, Bldg. 44
Denver, Colorado 80225

Dear Mr. Schreiber:

This is a follow-up to a telephone conversation between yourself and Ms. Michelle M.
Bechtoldt of my staff regarding the implementation of a *Decision and Order* in Case
Number 2006-CBV-00002, dated March 7, 2006, copy enclosed, relating to the wages
and benefits to be paid to security guards employed on Contract Number GS-09P-00-
NZD-0002 at various locations in Imperial, Riverside, San Bernardino, and San Diego
Counties, California.

The McNamara-O'Hara Service Contract Act (SCA) requires that service employees
engaged in the performance of a covered service contract receive no less than the
minimum monetary wages and fringe benefits determined by the Secretary of Labor. The
SCA wage determination shall reflect the wage rates and fringe benefits prevailing in the
locality where the contract service work is to be performed, unless the provisions of
section 4(c) of the Act apply. A section 4(c) wage determination shall reflect the wage
rates and fringe benefits (including any accrued or prospective wage rates and fringe
benefits) set forth in the predecessor contractor's collective bargaining agreement (CBA)
as a result of arm's-length negotiations. The provisions of section 4(c), however, shall
not apply to the successor contract period if the applicable CBA wages and fringe
benefits are determined by the Secretary of Labor after a hearing to be substantially at
variance with those prevailing for services of a character similar in the locality, or to not
have been reached as a result of arm's-length negotiations.

In the instant case, the United Government Security Officers of America (UGSOA) Local
Union No. 52 requested a section 4(c) hearing by alleging that the CBA rates the union
negotiated with U.S. Protect, Inc., and issued pursuant to sections 2(a) and 4(c) of the
SCA for the contract in question, were substantially at variance with the prevailing rates

-2-

for like services in the locality. In its *Decision and Order*, the ALJ determined that the referenced CBA rates were substantially at variance with those otherwise prevailing for services of a character similar in the locality. Consequently, the ALJ ordered that the following rates be paid to security officers employed on the contract:

| Classification | Minimum Wage Rate | Fringe Benefits |
|---|---|---|
| Security Officers | $21.54 | $2.86 per hour |

This letter serves to notify you of the application of these rates to the referenced contract. These rates are to be paid effective March 7, 2006, the date of the ALJ *Decision and Order*.

If you should have further questions, please feel free to contact Ms. Michelle Bechtoldt of my staff at (202) 693.0510.

Sincerely,

William W. Gross
Director, Office of
  Wage Determinations

Enclosure

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re: UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA, LOCAL NO. 52, et al.,      )<br>)<br>) | |

In Re: UNITED GOVERNMENT
SECURITY OFFICERS OF AMERICA,
LOCAL NO. 52, et al.,                                )
                                                     )
            Plaintiffs,                              )
                                                     )        Civil Action No. 07-0173 (CKK)
v.                                                   )
                                                     )
MICHAEL CHERTOFF,                                    )
Director,                                            )
United States Department of Homeland                 )
Security,                                            )
                                                     )
and                                                  )
                                                     )
GARY SCHENKEL,[1]                                    )
Director,                                            )
Federal Protective Service,                          )
United States Department of Homeland                 )
Security,                                            )
                                                     )
            Defendants.                              )
                                                     )

## PROPOSED ORDER

This matter having come before the Court on Defendants' Motion to Dismiss the First

Amended Complaint, plaintiffs' opposition, if any, and defendants' reply, if any, it is hereby

**ORDERED** that Defendants' motion is hereby GRANTED.  It is further

**ORDERED** that the complaint is hereby dismissed with prejudice.

**SO ORDERED** on this _____ day of _____, 200_____.


                                    _____
                                    COLLEEN KOLLAR-KOTELLY
                                    UNITED STATES DISTRICT JUDGE

_____

[1]Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Gary Schenkel has been automatically substituted in lieu of Paul R. Durette as the proper defendant in this case.  See Fed. R. Civ. P. 25(d)(1).  Mr. Schenkel was sworn in as the Director of the Federal Protective Service in March, 2007.