UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA LOCAL UNION NO. 52,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **ELAINE CHAO,** <br> **Secretary, U.S. Department of Labor,** *et al.*, <br><br> Defendants. | Case No.: 07-0173(CKK) |

**PLAINTIFFS' SURREPLY TO DEFENDANT DHS'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**I.     Introduction**

Attached to DHS's Reply Brief is a new exhibit ("Exhibit A") which is a document called "Amendment of Solicitation/Modification of Contract" issued by the DHS to US Protect on September 20, 2007.  Ultimately, this document demonstrates the baseless position taken by DHS in this matter and amplifies the Plaintiffs assertion in this case; i.e. DHS has a duty under the SCA to incorporate a wage determination ("WD") once the DOL applies the WD rates to the subject service contract as the prevailing wage for the localities in question.  DHS has just established that it does indeed have an obligation under the SCA to incorporate the new rates as asserted by the Plaintiffs.  For the foregoing reasons, as well as those set forth below, the Plaintiffs request that this Court deny DHS' Motion to Dismiss.

**II.     Law and Argument**

The overarching purpose of the SCA is to protect all employees of contractors who furnish services to federal agencies and to establish minimum compensation rates for wages and

benefits.  See 29 C.F.R. § 4.103; *American Waste Removal Co. v. Donovan*, 748 F.2d 1406 (10th Cir. 1984).  However, DHS audaciously argues that it has absolutely no duty whatsoever under the SCA to do anything as it relates to the incorporation of a wage determination ("WD") into its service contract with a contractor employing the employees who are the beneficiaries of the wage determination's increase in their wages and benefits.  Interestingly, while DHS asserts that it does not have any duty to do anything, it argues that everyone else in the process, namely the DOL, the Plaintiffs and US Protect have an affirmative obligation under the SCA to implement and pursue the payment of the ALJ's Decision.  Not only does this argument turn the SCA on its head and make the wage determination process a nullity by requiring the employees covered by the WD to seek an alternate venue in which to enforce their unchallenged victory, it also defies logic, especially considering that DHS' "new" exhibit undermines its outlandish assertions and contrived interpretation of the SCA.

As noted, the aforementioned new exhibit is entitled "Amendment of Solicitation/Modification of Contract" ("Amendment") and was issued by the DHS to US Protect on September 20, 2007.[1]  Significantly, this document states that the purpose of the Modification, in relevant part, is as follows:

> The purpose of this Modification P00007 is to **incorporate** the Dept of Labor's Administrative Law Judge (ALJ) Decision of 3/7/2006 **into this order and Contract** GS09P00NZD0002. The Decision increased the hourly rate for Guard II classification in Wage Determination #94-2057, and is applicable to employees covered by the CBA between USProtect and the UGSOA Local 52 which perform Guard II services only in the County of San Diego.

---

[1] 48 C.F.R. § 53.243 provides for the use of the referenced document, which is referred to as form "SF 30" in the CFR.  Moreover, Section 53.243 states that SF 30 is to be used for "…amending invitation for bids…modifying purchase and delivery orders…; and **modifying contracts**."  48 C.F.R. § 53.243 (emphasis added).

Exhibit A (emphasis added).

      Clearly, DHS is acting in compliance with its obligations under the SCA by issuing the Amendment of Solicitation. As the document itself states, the purpose is, at least as to the employees working in San Diego County, to "incorporate" the ALJ's decision into US Protects service contract, a process, which as the Plaintiffs have explained in their Memorandum in Opposition, is exactly what the SCA contemplates will occur in a WD scenario. Importantly, the document, which is also known as a "change order" was signed by a DHS Contracting Officer, Edward Paker, and then sent to US Protect, which now has the obligation to pay its employees working in San Diego in accordance with the WD rates effective as of March 7, 2006.[2] However, until this Modification is ordered by DHS, the WD is not payable by the contractor, and as a practical matter, cannot be paid by the contractor until funded.

      A sequential review of the SCA and its applicable regulations makes it abundantly clear that DHS' interpretation of the statute and its denial of any duty under the same cannot withstand scrutiny. Under the SCA, the following procedures apply to a wage determination scenario:

> 1.    A petition is filed by an employee representative (e.g. Union) for a hearing under the provisions of subsection 4(c) of the McNamara-O'Hara Service Contract Act, 41 U.S.C. § 353 (c), concerning wages paid to its members pursuant to a collective bargaining agreement between Local 52 and US Protect.
>
> 2.    Pursuant to the provisions of 29 C.F.R. § 4.10 (c), the Deputy Administrator of the Employment Standards Administration issues

---

[2] See line 13, box A of Exhibit A. Importantly, even the service contract entered into between DHS and US Protect has a clause permitting and even anticipating these types of modifications as noted in Line 13, box A of Exhibit A. Also, the obligation to pay the rates would be accomplished via a lump sum disbursement for a time frame running from March 7, 2006 until a date when the CBA rates matched or exceeded the WD rates.

an Order of Reference and thereby transmits the Union's request to the Office of Administrative Law Judges for a hearing.

3. The Office of Administrative Law Judges issues a notice to all interested persons that a pre-hearing conference and a hearing will be held at a certain place, date and time. Thereafter, a hearing is held in which all interested parties may participate.

4. After the hearing, a transcript of the hearing is delivered to the Office of Administrative Law Judges. Soon thereafter, the ALJ assigned to the matter issues his Decision and Order regarding the subject petition.  29 C.F.R. § 6.56.

5. Pursuant to 29 C.F.R. § 6.56, a party to the proceeding may seek a review of the Decision by the ARB.  However, if a petition with the ARB is not filed within 10 days of the issuance of the Decision, the Administrator of the Wage and Hour Division, Employment Standards Administration, U.S. Dept. of Labor (or his designated representative) ("Administrator") shall promptly issue a wage determination which may be required as a result of the Decision.  See 29 C.F.R. § 6.56; 29 C.F.R. § 6.2(a); 28 C.F.R. § 52.222-41(f).

6. Once the WD rates are applied to the subject employees and contract, the Administrator advises the contracting agency of the application of the new rates to the contract. "[T]he Department [of Labor] will issue a new or revised wage determination setting forth the applicable wage rates and fringe benefits. Such a determination **shall** be made a part of the contract … in accordance with the decision of the … Administrative Law Judge … irrespective of whether **such issuance** occurs prior to or after the award of a contract."   28 C.F.R. § 52.222-41(f) (emphasis added).   The regulations further provide that "[t]he contract price or contract unit price labor rates **will** be adjusted to reflect the Contractor's actual

increase … in applicable wages … to the extent that the increase is made to comply with … [a]n increased or decreased wage determination otherwise applied to the contract by operation of law."[3] 48 C.F.R. §§ 52.222-43(d) and (2) (emphasis added).

7. The contracting agency, in accordance with 28 C.F.R. § 52.222-41(f) and 48 C.F.R. §§ 52.222-43(d) & (2) then issues through its Contracting Officer, pursuant to 48 C.F.R. § 53.243, via the use of form SF 30, an Amendment of Solicitation/Modification of Contract to its service contractor advising that the contracting agency has incorporated the WD into its service contract and that there will be a resulting increase in the contract price and/or labor rates under the contract. See e.g. Exhibit A.

8. Pursuant to 48 C.F.R. § 52.222-43(f), the Contractor has the right to request an increase in the payment for its services to offset any increase that may be imposed on it by the contracting agency due to, among other things, a wage determination, a change in the minimum wage, or anything else that is "applied to the contract by operation of law."

Contrary to the assertions of DHS, the foregoing demonstrates that the SCA's wage determination process is straightforward and certainly contemplates the involvement of the contracting agency. Indeed, the regulations governing the process require a significant amount of involvement by the "contracting officer" from the contracting agency. Moreover, if the contracting agency does not have any obligation to act under the regulatory scheme of the SCA it would eviscerate the very heart and purpose of the Act and render any attempt by those protected by it to avails its protections a supremely futile endeavor.

Moreover, DHS' argument that 48 C.F.R. § 52.222-43(f) supports its proposition that it is

---

[3] For clarification, on page 14 of the Plaintiffs' Opposition, this citation was incorrectly referenced as 48 C.F.R. § 52.222-43(f). The correct citation is 48 C.F.R. §§ 52.222-43(d)&(2).

the responsibility of the contractor to implement the wage determination is a strained interpretation at best. Reading the subject CFR as a whole, rather than selectively quoting its provisions, reveals that it is designed to address price adjustments that may occur during the term of a service contract. As the title suggests "Fair Labor Standards Act and Service Contract Act—Price Adjustment (Multiple Year and Option Contracts)", the provisions of the CFR address scenarios wherein a service contract may be modified due to events precipitated by the statutes mentioned, which would include, among other things, wage determinations, and other wage increases brought about by the actions of the contractor, the government or union. In any of these scenarios, the contractor has the ability to seek an increase in its compensation from the contracting agency so it can offset any increases in its cost of doing business.[4] However, there is absolutely nothing in this CFR that nullifies DHS' duty to incorporate a WD into a service contract under the SCA; to argue that it does simply demonstrates the inherent weakness of DHS' position in this matter. Finally, until the contracting agency incorporates the WD, as per Exhibit A, the contractor would not have sufficient funds to pay the increased wages, which in this instance are substantial. Consequently, the contractor will not voluntarily apply the WD until it receives the change order from the agency at which time it has the assurance it will be funded to pay the increase.[5]

      In addition to demonstrating the propriety of the Plaintiffs current action and that DHS has an affirmative obligation and duty under the SCA to complete the process by incorporating the WD into the contract, Exhibit A also validates the necessity for this Court's intervention due

---

[4] It only stands to reason that the SCA would provide a process for contractors to received additional compensation for its services considering that the original bids would not be able to anticipate increases in costs due to such things as wage determinations and increase in the minimum wage.

[5] See also argument at page 14-16 of Plaintiffs' Opposition.

to DHS' revelation that it has made limited application of the ALJ's Decision. As the Amendment states, it is only " applicable to employees covered by the CBA between USProtect and the UGSOA Local 52 which perform Guard II services **only** in the County of San Diego." Exhibit A (emphasis added).[6] However, the ALJ's decision addresses the wages and benefits being paid under the subject service contract that US Protect has with the DHS which covers US Protect's employees working under the service contract in Imperial, Riverside, San Bernardino and San Diego Counties, all of which are covered by the CBA between Local 52 and US Protect. The audacity of DHS' revision to the ALJ's decision is unconscionable, especially considering that it chose to not participate in the variance hearing proceedings at any time and did not appeal the Decision to the ARB. Now, some 18 months later, DHS has not only decided that it can arbitrarily ignore its duties under the SCA, but that it can also unilaterally modify the ALJ's Decision, which is the product of a process which they chose to ignore. DHS' hubris is beyond the pale, and amplifies not only the legitimacy of the Plaintiffs plight, but also the fact that this Court must indeed intervene to prevent further abuses by DHS. As noted in *Carpet, Linoleum & Resilient Tile Layers, Local Union 419 v. Brown*, 656 F.2d 564 (10th Cir. 1981),

> Where an agency completely ignores the purpose of the controlling statute, as the defendants did in this case, there cannot **be any rational basis in law to support its decision**. A reviewing court would be doing less than its duty if it failed to set aside the agency action. By holding an agency accountable to its lawful duties, **the administrative process will be vindicated**.

*Brown*, 656 F.2d at 568 (emphasis added).

As the court in *Brown*, this Court is faced with an agency that has completely ignored the purpose of the controlling statute. Moreover, DHS' callous and brazen disregard for its role

---

[6] Importantly, the possibility of this happening was expressed as a concern by the Plaintiffs. See Plaintiffs' Opposition at 23.

contemplated by the SCA cannot and has not been supported by a serious or honest interpretation of the Act. Accordingly, and as Exhibit A precisely displays, there is not any rational basis in law to support its position or decisions in this matter. The Plaintiffs are looking to this Court to hold DHS accountable to its lawful duties, so that not only will the administrative process be vindicated, but so too will the Plaintiffs.

Without DHS' performance of its plainly defined, peremptory, ministerial duty the entire wage determination process comes to a grinding halt and the SCA is rendered a nullity. Accordingly, the Plaintiffs request that this Court deny the Motion to Dismiss and permit them to proceed with their claims.

Respectfully submitted,

/s/ Leslie Deak
Leslie Deak, Esq. [PA0009]
**Law Offices of Leslie Deak**
1016 16th Street, N.W., Suite 300
Washington, D.C. 20036
Tel.:   (202) 822-8736
Fax:   (202) 862-4432
deaklaw@comcast.com


/s/ John A. Tucker
John A. Tucker (0052055 - OH. S.Ct.)
**John A. Tucker Co., L.P.A**
1 South Main Street, Suite 301
Akron, Ohio 44308
Phone: (330) 253-7100
Fax:    (330) 253-2500
jatucker@jatuckerlaw.com


ATTORNEYS FOR PLAINTIFFS,
INTERNATIONAL UNION, UNITED
GOVERNMENT SECURITY OFFICERS OF AMERICA,
and its LOCAL 52

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served via the Court's ECF system this 30th day of October, 2007 upon all counsel of record.

*/s/ Leslie Deak*
Leslie Deak, Esq. [PA0009]