**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED GOVERNMENT SECURITY
OFFICERS OF AMERICA, LOCAL NO. 52,
*et al.*,

      Plaintiffs,

      v.

MICHAEL CHERTOFF,
Secretary, United States Department of
Homeland Security, *et al.*,

      Defendants.

Civil Action No. 07-173 (CKK)

**MEMORANDUM OPINION**
(November 24, 2008)

This is an action for mandamus and declaratory relief.  Plaintiffs United Government

Security Officers of America Local No. 52 and United Government Security Officers of America

International Union (collectively, "UGSOA") are the bargaining representatives for

approximately 140 security officers employed by USProtect Corporation ("USProtect") at

various federal facilities in California.  USProtect has a contract for security services with

Federal Protective Services, an agency operating within the Department of Homeland Security

("DHS").

On March 7, 2006, UGSOA obtained a Decision and Order from Administrative Law

Judge ("ALJ") Paul A. Mapes, who found that the wages and fringe benefits paid to these

UGSOA employees were substantially less than the prevailing rates for other security workers in

the same geographic areas.  ALJ Mapes ordered the Department of Labor ("DOL") to issue a new

wage determination to increase the employees' wages and fringe benefits in accordance with his

decision.  Pursuant to that Order, DOL sent a new wage determination to DHS on or around

August 16, 2006.  The seminal question in this case is whether Defendants must comply with

ALJ Mapes's Decision and Order and DOL's new wage determination by incorporating the

increased wage and benefit rates into the service contract with USProtect.

UGSOA has brought suit against Michael Chertoff, in his official capacity as Secretary of

DHS, and Paul Durette, in his official capacity as Acting Director of the Federal Protective

Service (collectively, "Defendants").  UGSOA's Amended Complaint seeks (1) a writ of

mandamus requiring Defendants to comply with and implement ALJ Mapes's Decision and

Order and (2) a declaratory judgment that ALJ Mapes's Decision and Order was a lawful, final

decision, and DOL's interpretation of that Decision and Order is final and binding on DHS.

Currently pending before the Court is Defendants' [15] Motion to Dismiss UGSOA's

Amended Complaint, in which Defendants argue that they have no legal obligation to incorporate

the new wage and benefit rates into the service contract with USProtect.  After UGSOA filed its

Opposition to that motion, however, Defendants notified the Court that they had decided to

incorporate the new rates for some, but not all, of the employees covered by ALJ Mapes's

Decision and Order.  Defendants supported their representation by attaching an exhibit to their

Reply that identified the modification they had made to the service contract with USProtect.

Because Defendants presented matters to the Court that are outside the pleadings, and the

Court has decided not to exclude them from consideration, the Court shall convert Defendants'

Motion to Dismiss into one for Summary Judgment.[1]  *See* Fed. R. Civ. P. 12(d).  Having

---

[1] The Court had previously advised the parties that "Motions to Dismiss that present
matters outside the pleadings are converted to Motions for Summary Judgment."  [2] Order at 1
(Mar. 6, 2007).

thoroughly considered the parties' submissions, including the attachments thereto, applicable

case law, statutory authority, and the record of the case as a whole, the Court shall DENY

Defendants' [15] Motion to Dismiss, converted to a Motion for Summary Judgment, for the

reasons that follow.[2]

## I. BACKGROUND

*A.    Statutory and Regulatory Background*

This case concerns the McNamara-O'Hara Service Contract Act of 1965, 41 U.S.C.

§§ 351-38 (the "SCA"), an act establishing labor standards for contracts providing services to the

federal government (*i.e.*, service contracts).  The SCA requires every federal government service

contract in excess of $2,500 to specify the minimum hourly and fringe benefits that are to be paid

to the employees working under the contract.  *Id.* §§ 351(a)(1), (a)(2).  The wages and benefits

are predetermined by the Secretary of the Department of Labor ("DOL") (or his or her authorized

representative), based on the prevailing rates for employees working in the same locality or,

where a Collective-Bargaining Agreement ("CBA") covers such employees, the rates for the

employees specified in the CBA.  *Id.*

The SCA authorizes the Secretary to hold hearings to determine whether the wages for

employees operating under a CBA are substantially at variance with those prevailing for similar

services in the locality.[3]  *Id.* § 353(c).  Pursuant to the provisions of 29 C.F.R. § 4.10, such

hearings may be requested by the contracting company or its employees (or other interested

_____

[2] The Court notes that UGSOA has not filed its own cross-motion for relief.

[3] Such hearings are permissible when (1) there has been a prior contract involving
substantially the same services and (2) the wages for the employees working on the earlier
contract were set pursuant to a CBA.  41 U.S.C. § 353(c)

persons) by sending information to the Administrator of the Wage and Hour Division,

Employment Standards Administration, of DOL (the "Administrator").  29 C.F.R. § 4.10(b).  If

the Administrator determines that a substantial variance may exist, the Administrator is

authorized to refer the matter to the Chief Administrative Law Judge, for designation to an ALJ,

who renders a decision as to whether there is, in fact, a substantial variance:

> [the ALJ] conduct[s] such a fact finding hearing as may be necessary to render a
> decision solely on the issue of whether the wages and/or fringe benefits contained
> in the collective bargaining agreement which was the basis for the wage
> determination at issue are substantially at variance with those which prevail for
> services of a character similar in the locality.

*Id.* § 4.10(c).  A party who decides to appeal an ALJ's decision must file a petition for review by

the Administrative Review Board within 10 days of the decision.  *Id.* § 6.57.

If an ALJ determines, as a result of a hearing, that some or all of the wages or fringe

benefits specified in a CBA are substantially at variance with the wages or fringe benefits

prevailing in the locality (and assuming no appeal is taken within ten days), two consequences

follow that are central to the present litigation.  First, a new wage determination must be issued

by DOL.  *See* 29 C.F.R. § 4.163 ("the Administrator *will* cause a new wage determination to be

issued in accordance with the decision of the Administrative Law Judge or the Administrative

Review Board, as appropriate") (emphasis added); *id.* § 6.56 ("the Administrator *shall* promptly

issue any wage determination which may be required as a result of the decision") (emphasis

added); 48 C.F.R. § 52.222-41(f) ("the Department *will* issue a new or revised wage

determination setting forth the applicable wage rates and fringe benefits").  Second, after DOL

issues its new wage determination, the contracting agency must amend its service contract to

specify the new wage and fringe benefit rates for the affected employees.  *See* 29 C.F.R. § 4.163

("the solicitation, or the contract if already awarded, *must* be amended to incorporate the newly

issued wage determination") (emphasis added); 48 C.F.R. 52.222-41(f) ("[s]uch determination

*shall* be made part of the contract or subcontract, in accordance with the decision of the

Administrator, the Administrative Law Judge, or the Administrative Review Board, as the case

may be, irrespective of whether such issuance occurs prior to or after the award of a contract or

subcontract").

After the contracting agency incorporates the new rates for wages and fringe benefits, the

contracting company may request an increase in the payment for its services to offset any

increase that may be imposed by the increased wage and fringe benefit rates. *Id.* § 48.222-42(d)-

(f).

 *B. Factual Background*

Since September 2003, USProtect employees have provided security services at federal

facilities in the California counties of Imperial, Riverside, San Bernardino, and San Diego. *See*

Defs.' Mot., Ex. B at 1 (8/16/06 Letter from W. Gross to K. Schreiber). UGSOA filed a petition

for a hearing to determine whether the wages and benefits paid to these employees pursuant to a

CBA were at variance with those wages prevailing for similar services in the same localities. *Id.*,

Ex. A, at 1 (3/7/06 Decision and Order of ALJ Mapes) (hereinafter "ALJ Decision"). UGSOA's

request was thereafter transferred to ALJ Mapes. *Id.*

On or about February 8, 2006, UGSOA appeared at a pre-hearing conference and argued

that the wages for its members employed by USProtect should be increased from $18.50 to

$21.54 per hour and that their fringe benefit payments should be increased from $2.56 to $2.86

per hour. *Id.* DHS elected not to participate in these proceedings, indicating that it would not

"intervene in labor disputes between agency contractors and their unions." *Id.* at 2 n.1.

USProtect similarly declined to participate but gave no reason for its decision. *Id.*

Although ALJ Mapes could have granted UGSOA's request for increased wages and

fringe benefits solely based on the lack of opposition to the request, *see* 29 C.F.R. § 6.7(b)

(authorizing the ALJ to "find the facts as alleged in the complaint" if "no party appears for the

opposing side"), he nevertheless held an evidentiary hearing to consider UGSOA's request on its

merits. *See* ALJ Decision at 3.  After hearing the evidence presented, ALJ Mapes held that

UGSOA had established the existence of a substantial variance:

> UGSOA has made the necessary 'clear showing' that the compensation being paid
> to members of Local 52 for providing services covered by the current procurement
> contract with [USProtect] for the San Diego vicinity must be immediately
> increased . . .

*Id.* at 4.  ALJ Mapes's holding was based on several findings.  He found that "UGSOA's request

[was] well supported by the testimony of three witnesses who described the similarities between

the work performed by members of Local 52 and the work performed by other workers who are

classified as Security Guard II and Court Security Officers." *Id.* at 3.  He found that "the

prevailing wage suggested by the UGSOA is consistent with the results of Department of Labor

surveys showing the wages prevailing for security workers in the vicinity of San Diego." *Id.* at 4.

Finally, he found that "the differential between the current hourly wage and the prevailing hourly

wage (16.4 percent or approximately $6,000 per year) [was] substantial." *Id.*

As described above, when an ALJ determines that wages or fringe benefits are

substantially at variance with the wages or fringe benefits prevailing in the particular locality,

(1) a new wage determination must be issued by DOL and (2) the contracting agency must amend

its service contract to specify the new wages and fringe benefits for the affected employees.  In

this case, ALJ Mapes specifically invoked 29 C.F.R. § 4.163(c) and "directed the Administrator

of the Department of Labor's Wage and Hour Division to promptly issue a new wage

determination in accordance with [his] Decision and Order."  *Id.* at 5.  DOL, in turn, complied

with this regulation and ALJ Mapes's Decision and Order by issuing a new wage determination,

sent via letter by William Gross, the Director of the Office of Wage Determinations, to DHS.

*See* Defs.' Mot., Ex. B at 1 (8/16/06 Letter from W. Gross to K. Schreiber).  The letter advised

DHS of ALJ Mapes's decision "relating to the wages and benefits to be paid to security guards

employed on [the USProtect service contract] at various locations in Imperial, Riverside, San

Bernardino, and San Diego Counties, California."  *Id.*  Mr. Gross specifically stated that "the

ALJ ordered that [increased] rates be paid to security offers employed on the contract," and

explained that his letter

> serves to notify [DHS] of the application of these rates to the referenced contract.
> These rates are to be paid effective March 7, 2006, the date of the ALJ Decision
> and Order.

*Id.* at 2.

The present litigation arose when Defendants took the position that they had no legal

obligation to amend the service contract with USProtect to specify the new wage and fringe

benefit rates ordered by ALJ Mapes and specified in DOL's new wage determination.  *See* Am.

Compl. ¶ 15; Defs.' Mot. at 8-11 (arguing that there is no legal requirement for Defendants to

amend their service contract despite ALJ Mapes's Decision and Order and DOL's new wage

determination).  Perhaps recognizing the legally indefensible ground on which they stood,

Defendants shifted positions in the course of litigating this case and amended the service contract

with USProtect to incorporate the new rates.  *See* Defs.' Reply, Ex. A at 1 (9/20/07 Contract

Modification) ("[t]he purpose of this Modification [] is to incorporate the Dept of Labor's

Administrative Law Judge (ALJ) Decision of 3/7/2006 into this order and Contract . . .").  In

doing so, however, Defendants inexplicably amended the service contract to increase the rates

paid only to those employees located in San Diego county, even though the affected employees

were also located in the California counties of Imperial, Riverside, and San Bernardino.  *Id.*

(modifying the contract for "employees covered by the CBA between USProtect and the UGSOA

Local 52 which perform Guard II services only in the County of San Diego").  Accordingly, the

seminal question in this case concerning Defendants' legal obligation to modify the service

contract with USProtect remains unresolved as to the employees located outside San Diego

county.

  *C.*  *Procedural Background*

  UGSOA filed this action on January 24, 2007, and filed an Amended Complaint June 27,

2007.[4]  Defendants filed a Motion to Dismiss, arguing that UGSOA cannot establish the elements

necessary to obtain mandamus or declaratory relief.  UGSOA filed an Opposition and Defendants

filed a Reply.  Because Defendants' Reply asserted, for the first time, that they had modified the

service contract with USProtect to incorporate the new wage rates for UGSOA employees, the

Court granted UGSOA leave to file a Sur-Reply to address that assertion.[5]

---

  [4] The original Complaint also named USProtect and DOL as Defendants.  USProtect was
dismissed from this litigation when UGSOA failed to oppose USProtect's Motion to Dismiss.
*See* [6] Order at 1 (Jun. 19, 2007), and UGSOA dropped DOL as a Defendant when it filed an
Amended Complaint.

  [5] Defendants filed a Notice on November 1, 2007, arguing that the Sur-Reply exceeded
the scope of new issues that Defendants had raised in Reply.

After reviewing the parties' submissions, the Court issued an Order explaining that ALJ Mapes's Decision and Order expressly relied on the provisions of 29 C.F.R. § 4.163(c), which appears "to indicate that once an Administrative Law Judge issues its decision, a contracting agency must amend its service contract to incorporate the resulting wage determination." [26] Order at 1-2 (Jun. 30, 2008). For reasons that were unclear, the parties did not address that regulation in their submissions to the Court. The Court therefore ordered the parties to file supplemental briefs on the effect of that regulation on UGSOA's claims for relief.[6] Pursuant to the Court's Order, Defendants filed a supplemental brief on July 15, 2008, and UGSOA filed a supplemental brief on July 29, 2008. Defendants' motion is thus fully briefed and ripe for decision.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under the summary judgment standard, Defendant, as the moving party, bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it]

---

[6] The Court notes that both parties did cite regulations that were consistent with 29 C.F.R. § 4.163(c) in their pleadings. *See, e.g.*, Defs.' Mot. at 12; Pls.' Opp'n at 10; 48 C.F.R. § 52.222-41(f) ("Where it is found . . . that some or all of the wages and/or fringe benefits . . . are substantially at variance with those which prevail for services of similar character in the locality . . . the Department will issue a new or revised wage determination . . . . Such determination shall be made part of the contract . . . in accordance with the decision of the Administrator, [or] the Administrative Law Judge. . . .").

believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Plaintiff, in response to Defendants' motion, must "go beyond the pleadings and by [his] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).  "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come

forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing

Fed. R. Civ. P. 56(e)) (emphasis in original).

### III. DISCUSSION

A.      *Mandamus Relief*

Under the Mandamus Act, a district court may "compel an officer or employee of the

United States or any agency thereof to perform a duty owed to the plaintiff." *In re Medicare*

*Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005) (quoting 28 U.S.C. § 1361). Although

mandamus is an "extraordinary remedy" and is used "only in the clearest and most compelling

cases," *Cartier v. Sec'y of State*, 506 F.2d 191, 199 (D.C. Cir. 1974), the showing necessary to

obtain mandamus is not inherently preclusive. A court may issue mandamus where "(1) the

plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no

other adequate remedy available to the plaintiff." *In re Medicare Reimbursement Litig.,* 414 F.3d

7 at 10 (quoting *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002)). Even where a court

finds these legal requirements have been satisfied, mandamus should issue only where the court

also finds "'compelling . . . equitable grounds'" justifying the remedy. *Id.* (quoting *13th Reg'l*

*Corp. v. U.S. Dep't of the Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980)). Defendants argue that

UGSOA has failed to establish any of the legal requirements necessary to obtain mandamus

relief, as to which the Court shall now turn.

1.      UGSOA's Clear Right to Relief

UGSOA initiated a variance hearing pursuant to Section 353(c) of the SCA. ALJ Mapes

held an evidentiary hearing, after which he found that UGSOA had made a "clear showing" that a

substantial variance existed. ALJ Decision at 4. ALJ Mapes ordered DOL to issue a new wage

determination to increase the wage and benefit rates paid to the UGSOA employees working

pursuant to the USProtect service contract. *Id.* at 5. Defendants elected not to participate in that

hearing and the ALJ's Decision and Order was never appealed. *Id.* at 2. n.1. DOL issued a new

wage determination in compliance with the ALJ's Decision and Order by sending a letter from

William Gross, the Director of the Office of Wage Determinations, to DHS, indicating that the

revised rates were to be paid as of the date of the ALJ's Decision and Order. *See* Defs.' Mot.,

Ex. B at 1 (8/16/06 Letter from W. Gross to K. Schreiber).

Under applicable regulations, UGSOA has no remaining hurdles to negotiate before

Defendants *must* incorporate the new wage rates into its service contract. *See* 29 C.F.R. § 4.163

("the solicitation, or the contract if already awarded, *must* be amended to incorporate the newly

issued wage determination") (emphasis added); 48 C.F.R. 52.222-41(f) ("[s]uch determination

*shall* be made part of the contract or subcontract, in accordance with the decision of the

Administrator, the Administrative Law Judge, or the Administrative Review Board, as the case

may be, irrespective of whether such issuance occurs prior to or after the award of a contract or

subcontract").

Despite the foregoing, Defendants argue that UGSOA has no clear right to relief in this

case because it "essentially seek[s] relief under the SCA" and it is well-established that "'the

SCA does not confer a private right of action, but rather provides for exclusive administrative

enforcement with the Secretary of Labor.'" Defs.' Mot. at 7 (quoting *Danielsen v. Dole*, 746 F.

Supp. 160, 166 (D.D.C. 1990)). Defendants cite two other cases for the same proposition. *Id.*

(citing *District Lodge No. 166 v. TWA Servs., Inc.*, 731 F.2d 711, 716 (11th Cir. 1984) *and*

*Gautier Rodriguez v. Mason Tech., Inc.*, 931 F. Supp. 114, 118 (D.P.R. 1996)). Defendants'

argument, and the cases on which it relies, have no bearing on the issues before the Court.

Unlike each of the cases cited by Defendants, UGSOA is not seeking to force the Secretary of Labor to perform a function that is either discretionary or unsupported by any legal authority. For example, in *Danielson*, Plaintiffs sought a writ of mandamus to compel the Secretary of Labor to make an immediate determination as to certain underpayments associated with five service contracts. 746 F. Supp. at 166. The court explained that the SCA does not confer a private right of action, but rather provides for exclusive administrative enforcement with the Secretary of Labor. *Id.* Because the plaintiffs were essentially claiming that "the Secretary has been dilatory in enforcing the Administrator's wage determinations . . . [and] [t]he SCA grants the Secretary wide discretion to act in a manner 'necessary and proper to the public interest,'" the court could not identify a failure to act in violation of a mandatory duty. *Id.* at 167 & n. 16. *See also District Lodge No. 166*, 731 F.2d at 717-718 (denying claim for mandamus where the plaintiffs sought to compel the payment of back wages as to which they were precluded from pursuing directly under the SCA and where there was no statutory or regulatory language that supported the plaintiff's demand for such "unilateral retroactive relief"); *Gautier Rodriguez*, 931 F. Supp. at 118 (denying jurisdiction over plaintiffs' claims concerning reduced wages under the SCA because the Secretary of Labor has exclusive jurisdiction to enforce the SCA and the plaintiffs had not pursued administrative relief under the SCA).

In this case, UGSOA has sought and successfully obtained relief under the SCA from DOL. Far from compelling the Secretary of Labor to exercise a discretionary duty it otherwise would not perform, UGSOA is seeking to enforce its right to have its employees paid the wages as to which they are entitled based on the previous actions of the ALJ and DOL. UGSOA is also

13

relying on regulations that clearly dictate the actions that must be taken by the contracting agency and is not relying on provisions that confer broad, discretionary authority. *Compare* 29 C.F.R. § 4.163(c) ("the contract if already awarded, *must be amended* to incorporate the newly issued wage determination") (emphasis added) *with Danielsen*, 746 F. Supp. at 169-70 ("[e]nforcement proceedings . . . *may* be instituted . . . .") (quoting 29 C.F.R. § 6.15(a) (emphasis added)).

The Court therefore finds Defendants' arguments based on the lack of a private right of action under the SCA to be misguided and unpersuasive. Based on the facts of this case and the regulations set forth above, the Court finds that UGSOA has demonstrated a clear right to relief.

2. Defendants' Clear Duty to Act

Defendants assert that they have no "clear duty" to incorporate the increased wage and fringe benefit rates into the service contract with USProtect. *See* Defs.' Mot. at 9. Defendants support this assertion by arguing: (1) that UGSOA has not identified any authority requiring DHS to act; (2) assuming that DHS has a duty to act, that the letter from William Gross, the Director of DOL's Office of Wage Determination, did not require DHS to act or did not constitute a new wage determination; and (3) assuming that DOL issued a new wage determination, that Defendants have now fully complied with the directives contained therein by modifying the service contract for some, but not all, of the affected employees. *See* Defs.' Mot. at 8-11; Defs.' Reply at 3-6; Def's Suppl. Br. at 2-3. None of these arguments is meritorious.

First, Defendants' argument that they have no duty to act is directly undermined by 29 C.F.R. § 4.163. That regulation specifies that DOL "will cause a new wage determination to be issued in accordance with the decision" of an ALJ who finds that the wage and/or fringe benefit provisions of a CBA are substantially at variance with those prevailing in the locality. 29 C.F.R.

14

§ 4.163. Because "'it was the clear intent of Congress that any revised wage determinations resulting from [such a hearing] were to have validity with respect to the procurement involved,' the solicitation, or contract if already awarded, must be amended to incorporate the newly issued wage determination." *Id.* (internal citation omitted).

This regulation is consistent with several others that set forth what must follow after an ALJ's decision finding a substantial variance – the DOL must issue a revised wage determination and the contracting agency must incorporate it into the service contract. *See, e.g.*, 29 C.F.R. § 6.56 ("the Administrator shall promptly issue any wage determination which may be required as a result of the decision"); 48 C.F.R. § 52.222-41(f) ("the Department will issue a new or revised wage determination setting forth the applicable wage rates and fringe benefits" and ("[s]uch determination shall be made part of the contract or subcontract, in accordance with the decision of the Administrator, the Administrative Law Judge, or the Administrative Review Board, as the case may be, irrespective of whether such issuance occurs prior to or after the award of a contract or subcontract").

Defendants attempt to distinguish these regulations by arguing that USProtect–and not either of Defendants–is the entity that needs to act in response to the new wage determination.[7] *See* Defs.' Mot. at 11. For support, Defendants cite Section 351(b)(1) of the SCA, which

---

[7] Although unclear, Defendants may also have intended to argue that mandamus can lie only where a statutory duty is violated, as opposed to one based on a regulation. *See* Defs.' Mot. at 9 ("plaintiffs have cited no statutory provisions" to support their claims). If Defendants intended to advance this argument, it must be rejected as legally incorrect. *See, e.g.*, *Davis Assocs., Inc. v. Sec'y of Hous. & Urban Devel.*, 498 F.2d 385, 389 n.5 (1st Cir. 1974) ("even in an area generally left to agency discretion, there may well exist statutory *or regulatory* standards delimiting the scope or manner in which such discretion can be exercised. In these situations, mandamus will lie when the standards have been ignored or violated.") (emphasis added).

specifies that "[n]o contractor . . . shall pay any of his employees engaged in performing work on [service] contracts less than the minimum wage specified under section 206(a)(1) of title 29." Thus, Defendants surmise, USProtect "has the duty to pay its employees the wages as established by the prevailing wage rate." Defs.' Mot. at 10.

The Court is unpersuaded by Defendants' attempt to transfer its clear duty to act to USProtect. The language of the regulations set forth above require the contracting agency to modify its service contract where, as here, an ALJ finds a substantial variance. *See* 29 C.F.R. § 4.163; 48 C.F.R. § 52.222-41(f) . These regulations use the words "must" and "shall," respectively, leaving no discretion on the part of the agency. These regulations also cannot be read to require the contracting *company* to amend the service contract because the regulations anticipate that an agency's solicitation may also have to be amended – something that only the soliciting agency could perform. *See* 29 C.F.R. § 4.163 ("the solicitation, or the contract if already awarded, must be amended to incorporate the newly issued wage determination"). The statute cited as support by Defendants – Section 351(b)(1) of the SCA – does not conflict with the clear directive of this regulation. That section requires a contracting company to pay certain minimum wage rates, but it does not address whether an agency has a legal obligation to modify the service contract after a substantial variance has been determined to exist by an ALJ (the issue in this case).

Defendants' position is further undermined because the Director of the Office of Wage Determinations, working for the agency charged with administering the SCA, sent its wage determination to DHS–not USProtect. Upon receiving the new wage determination, Defendants then incorporated the new rates into the service contract with USProtect (albeit only for some of

the affected employees).  As Plaintiffs correctly observe, the form used by DHS is identified in

the federal regulations as the one used to modify such contracts, *see* 48 C.F.R. § 53.243 (stating

that the SF 30 is to be used for "modifying contracts") – a fact that is reflected in the exhibit

attached by Defendants.  *See* Defs.' Reply, Ex. A (9/20/07 Modification of Contract) (explaining

that the modification was made "to incorporate the Dept of Labor's Administrative Law Judge

(ALJ) Decision of 3/7/06 into this order and Contract," citing "52.243-1").  Defendants'

arguments therefore fails to explain (1) why DOL would send the new wage determination to

Defendants and not USProtect, (2) why DHS would undertake a contract modification it claims

to have no legal obligation to perform, and (3) why the regulations would specify the form the

agency should use to make such a modification if agencies are not required to make them.

Taking into account both the regulations set forth above as well as this factual background,

Defendants' argument must be rejected.

　　　　Defendants' second argument is that, even if they have a duty to act, the letter sent by

DOL did not "order" Defendants to act.  *See* Defs.' Mot. at 9 (arguing that DOL's letter did not

require Defendants to act); Defs.' Reply at 5-6 (same).  Defendants shifted this argument in their

Supplemental Brief to the Court, arguing that the letter was not, in fact, a wage determination at

all.  *See* Defs.' Suppl. Br. at 2-3 (arguing that Defendants have no obligation to act because the

DOL's letter is not a wage determination).  The Court rejects both variations of Defendants'

argument.

　　　　The first variation is unpersuasive for two reasons.  First, Defendants' obligation to

incorporate the wage determination into its service contract arises from the regulations set forth

above, not the precise language used by DOL.  *See, e.g.*, 29 C.F.R. § 4.163 ("[s]ince 'it was the

17

clear intent of Congress that any revised wage determinations . . . were to have validity with respect to the procurement involved,' the solicitation, or the contract if already awarded, must be amended to incorporate the newly issued wage determination") (internal citation omitted). Second, Defendants are wrong to assert that the letter did not require any action from them.  In particular, Mr. Gross specified that his letter concerned the "implementation" of the ALJ's Decision and Order, and that the increased rates "*are to be paid* effective March 7, 2006, the date of the ALJ Decision and Order."  Defs.' Mot., Ex. B at 2 (8/16/06 Letter from W. Gross to K. Schreiber) (emphasis added).  Given that the regulations governing the payment of these rates require the contracting agency to act–regulations that were specifically cited in the ALJ's Decision and Order–there is no question that this letter did, in fact, direct Defendants to act.

The second variation of Defendants' argument (that the letter is not a wage determination at all) is equally unavailing.  As an initial matter, Defendants' argument is substantially undermined by (1) their prior characterizations of the letter as a wage determination, *see, e.g.*, Defs.' Reply at 3 ("[n]othing in the SCA requires DHS to implement the wage determination"), and (2) the fact that they incorporated the new wage determination (at least in part) into the service contract with USProtect, as contemplated by the regulations set forth above.  *See, e.g.*, 29 C.F.R. § 4.163.  Defendants fail to explain why they would incorporate the new rates into the contract if they believed a new wage determination had not been issued.

Further, UGSOA sought a wage determination that was specific to their particular CBA, not a determination of general applicability.  As Defendants themselves recognize, had DOL issued a revised wage determination in standard form, it would have had the effect of raising the prevailing wage for the entire locality.  *See* Defs.' Mot. at 4 n.4.  Accordingly, "the Director

18

notified the contracting agency of the new wage determination applicable to this specific procurement contract via letter." *Id.* Defendants' argument that DOL violated its own regulations by not issuing a new wage determination, *cf.* 29 C.F.R. § 6.56 ("the Administrator shall promptly issue a wage determination . . . as a result of the [ALJ's] decision"), when the *Director of the Office of Wage Determinations* specifically advised the contracting agency of the new increased rates that had to be paid, is simply untenable.

Defendants' third argument that Defendants have fully complied with their legal obligations by issuing the September 20, 2007 contract modification that covered some (but not all) of the UGSOA employees at issue, *see* Defs.' Supp. Br. at 3, does not require extended discussion. Although Defendants have not elaborated on this perfunctory argument, it appears to be based on ALJ Mapes's shorthand language in his Decision and Order where he referred to the affected employees as located in "the vicinity of San Diego" and in the "San Diego-area." ALJ Decision at 1, 3-4.

There is no basis to limit ALJ Mapes's Decision and Order to only those employees located in San Diego *county*. Mr. Gross's letter makes unmistakably clear that the security guards employed on the contract at issue are located "at various locations in Imperial, Riverside, San Bernardino, and San Diego Counties, California." Defs.' Mot., Ex. B at 1 (8/16/06 Letter from W. Gross to K. Schreiber). If the only affected employees were located in San Diego county, a fact that is reflected nowhere in the record, Defendants' modification expressly limiting the change to only those employees located in the county of San Diego would be superfluous. Moreover, Defendants would have been able to argue that this case is moot, which they have never argued in any submission to the Court.

19

For all of these reasons, the Court finds that Defendants have a clear, non-discretionary duty to incorporate the increased wages for all employees covered by the ALJ's Decision and Order and DOL's wage determination, and not only those located in the county of San Diego.

        3.     <u>Adequacy of Alternative Remedies</u>

Defendants' last argument in opposition to UGSOA's claim for mandamus relief is also their most disingenuous. Defendants argue that mandamus should not issue because UGSOA must first pursue its administrative remedies. Defs.' Mot. at 11-14. Defendants argue that 29 C.F.R. § 4.191 "provides a mechanism by which plaintiffs themselves may present their grievance to the DOL."[8] Defs.' Mot. at 13.

Defendants appear to have forgotten that UGSOA has already pursued its administrative remedies under the SCA and successfully obtained both an ALJ judgment and a new DOL wage determination. Pursuant to the regulations implementing the SCA, nothing further is required or contemplated before the contracting agency is required to amend its service contract to incorporate the new wage rates. *See* 29 C.F.R. § 4.163. Although Defendants cite 29 C.F.R. § 4.191 for support, a regulation that allows employees to report violations of the SCA to DOL, there is nothing in the act that allows DOL to enforce a wage determination against a government

---

[8] Defendants' Motion also initially argued that new wage determinations are automatically incorporated into a service contract without any action by a contracting agency. *See* Defs.' Mot. at 12. Not only is this argument unsupported by the regulations set forth in the text above, but Defendants concede the frivolousness of this argument by having now incorporated the new wage determination into the service contract for some but not all employees (thereby raising the wages and fringe benefits for only some employees), demonstrating that an agency must amend its service contract prior to implementation of the new rates. Defendants abandoned this argument in their Reply.

agency; the regulations assume such compliance.[9]  *Id.*  Accordingly, there are no additional administrative avenues for UGSOA to pursue under the SCA.  Defendants' suggestion that UGSOA must re-enter DOL's administrative channels because of Defendants' refusal to comply with the regulations promulgated under the SCA is therefore puzzling, as it is unclear why Defendants would be any more inclined to respond to a second ALJ determination or DOL directive.[10]

The Court finds that UGSOA has overcome the substantial threshold showing for each of the three mandamus elements.  The Court further finds that the weight of the equities in this case clearly favors UGSOA, which has gone through the entire administrative process and successfully obtained both an ALJ Decision and Order and a new DOL wage determination.  In contrast, Defendants have offered no persuasive reason why these employees are not entitled to the increased wages and fringe benefits ordered by ALJ Mapes and DOL.  Accordingly, having found that UGSOA has met its burden with respect to the three mandamus threshold elements, and that the equities weigh in its favor, the Court shall deny Defendants' Motion to Dismiss, converted to a Motion for Summary Judgment, with respect to UGSOA's mandamus claim.

B.    *Declaratory Judgment Act*

UGSOA also seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C.

---

[9] Although the DOL is no longer a party to this action, the Court notes that its Motion to Dismiss argued the same.  *See* DOL's Mot. at 6 ("While the SCA authorizes the Secretary of Labor to enforce the payment of prevailing wages and fringe benefits against government contractors, it does not provide any mechanism for the enforcement of the Secretary's determinations against a government agency.") (emphasis in original).

[10] The Court notes that Defendants' Reply cites to numerous cases for support.  None of those cases addressed, as here, a non-complying agency subject to a non-discretionary duty to act.

§ 2201.  This act allows the Court to "declare the rights and other legal relations of any interested

party seeking such declaration," 28 U.S.C. § 2201, although it "is not an independent source of

federal subject matter jurisdiction," *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (citing *Skelly*

*Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)).  To invoke the Declaratory

Judgment Act, a plaintiff must demonstrate that "there is a substantial controversy, between

parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance

of a declaratory judgment."  *Atlas Air, Inc. v. Air Line Pilots Ass'n, Int'l*, 69 F. Supp. 2d 155, 162

(D.D.C. 1999) (citing *Maryland Cas. Co. v. Pacific Coal. & Co.*, 312 U.S. 270, 273 (1941)).

DHS raises four arguments as to why its believes that UGSOA is not entitled to

declaratory relief: (1) UGSOA cannot establish subject-matter jurisdiction to obtain declaratory

relief; (2) UGSOA's claim for declaratory relief circumvents the SCA which provides no private

right of action; (3) there is no actual case or controversy; and (4) DOL's new wage determination

does not constitute final agency action.  *See* Defs.' Mot. at 14-20.  Each of these arguments lack

merit.

First, subject-matter jurisdiction is established where, as here, a plaintiff has shown a

right to mandamus relief.  *See Nat'l Treasury Employees Union v. Nixon*, 492 F.2d 587, 616

(D.C. Cir. 1974) (explaining that the Court could "act pursuant to the provisions of the Federal

Declaratory Judgment Act," and although "[t]hat Act does not itself provide an independent

subject matter jurisdictional base . . . subject matter jurisdiction is present under section 1361

[the mandamus statute]") (internal citation omitted).

Second, UGSOA's claim for declaratory relief does not improperly circumvent the SCA.

A court may "utilize the tool of declaratory relief" where grounds otherwise exist to issue

mandamus. *Id.* Moreover, as explained above, Plaintiffs in this case are not seeking to force the Secretary of Labor to perform a function that is either discretionary or unsupported by any legal authority (which would circumvent the SCA), but rather are seeking to force Defendants to comply with their non-discretionary legal obligations. Declaratory relief is therefore appropriate.

Third, Defendants' argument concerning the lack of a case or controversy is predicated on their mistaken legal theory that they have no legal obligation to incorporate the increased wage and fringe benefit rates into the USProtect service contract. Defs.' Mot. at 18-19. Because Defendants are required to incorporate the increased rates (as they have already done, in part), and their failure to do so harms UGSOA, there is a clear case or controversy.

Fourth, Defendants' argument about final agency action is misplaced. UGSOA is not challenging a *DOL* determination that would require consideration of whether a final agency action has occurred. Rather, UGSOA is challenging *Defendants'* violation of their legal obligations under the regulations implementing the SCA. To the extent Defendants are arguing that their legal obligation has not yet arisen because DOL has not issued a wage determination, that argument is simply a re-hash of their argument that Mr. Gross's letter did not direct Defendants to act or did not constitute a wage determination. As discussed above, neither variation of this argument is persuasive.[11]

Accordingly, the Court shall deny Defendants' Motion with respect to Plaintiffs' claim for declaratory relief.

---

[11] The Court notes that, prior to being dismissed as a Defendant in this case, DOL represented that its August 16, 2006 letter fulfilled its duties under the SCA, suggesting that it believed the letter to be a final agency action. *See DOL Mot. for Summ. J.* at 10 ("to the extent Plaintiffs seek to require the DOL Defendants to 'issue a directive to DHS to comply with the Decision' . . . this action has already been performed") (internal citation omitted).

## IV.  CONCLUSION

For the reasons set forth above, the Court shall DENY Defendants' [15] Motion to

Dismiss, which the Court has converted into a Motion for Summary Judgment.  Although this

Memorandum Opinion supports UGSOA's request for mandamus and/or declaratory relief,

UGSOA has not filed a cross-motion on which such relief may be granted.  Accordingly, unless

the parties resolve their dispute in accordance with this Memorandum Opinion and

accompanying Order, Plaintiffs shall file a dispositive motion no later than December 12, 2008,

with an opposition due no later than December 30, 2008, and a reply, if any, due January 5, 2009.

An appropriate Order accompanies this Memorandum Opinion.


Date: November 24, 2008


_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge